HARVEY W. MASTERS v. HENRY J. LEE.

FILED MARCH 6, 1894.     No. 4903.

Commercial Agencies: DAMAGES: LIABILITY OF MEMBERS: LIBEL: CONSPIRACY. The constitution of an association of retail dealers provided: " Whenever an account against any person shall have been listed in the abstract of unsettled accounts issued by our general association, or certified to the secretary of this branch by said association as unsettled, no member shall in any case open an account without security with such delinquent, and the opening of such account by any member with such person shall be considered a misdemeanor, and subject such member to an investigation by the executive board, and if found guilty he shall pay to said board a fine of twenty dollars for the sole use and benefit of this branch, and his neglect or refusal to comply with this demand shall make him liable to expulsion from said association." In an action for damages against one of the members of said association by an alleged delinquent against whom a claim had been, by the defendant, procured to be listed, *held,* that the defendant thereby rendered himself liable for all damages sustained by the plaintiff by reason of said listing and the publication of his alleged delinquency, whether such damage was owing to a technical libel or to the refusal of members of said association to extend credit to plaintiff because of the provision above quoted in relation to listing and publication.

ERROR from the district court of Dodge county. Tried below before MARSHALL, J.

*C. Hollenbeck* and *Frick & Dolezal,* for plaintiff in error, contending that upon the ground of conspiracy the right of

plaintiff to recover is complete and unavoidable, cited:
*Muetze v. Tuteur,* 46 N. W. Rep. [Wis.], 124; Cooley,
Torts, 421; *Albrecht v. Treitschke,* 17 Neb., 205; *Carew
v. Rutherford,* 106 Mass., 1; *Gregory v. Brunswick,* 6
Man. & Gr. [Eng.], 205; *Mapstrick v. Ramge,* 9 Neb.,
393; *Swan v. Saddlemire,* 8 Wend. [N. Y.], 676.

*Munger & Courtright, contra,* contending that the publi-
cation is not libelous *per se,* cited : Townshend, Slander &
Libel, secs. 146–148, 132, 191, 345, 200, 181; *Newbold
v. Bradstreet,* 57 Md., 38; *Woodruff v. Bradstreet,* 116 N.
Y., 217; *Geisler v. Brown,* 6 Neb., 254; 3 Sutherland,
Damages, p. 664; *Pittsburgh, A. & M. R. Co. v. Mc-
Curdy,* 8 Atl. Rep. [Pa.], 231; *Strader v. Snyder,* 67 Ill.,
404; *Johnston v. Morrison,* 21 Pac. Rep. [Ariz.], 465;
*Riddle v. State,* 17 S. W. Rep. [Tex.], 1073.

RYAN, C.

On the 17th day of February, 1890, plaintiff filed his
amended petition in the district court of Dodge county, in
which he alleged that the defendant, unlawfully, mali-
ciously, and wickedly, intending, designing, and contriving
how to injure the plaintiff and ruin the plaintiff in his
credit and make it impossible for the plaintiff to obtain the
necessaries of life, and goods, wares, and merchandise on
credit from and among the merchants of the city of Fremont
and throughout the states of Nebraska, Iowa, and Kansas,
did falsely publish and cause it to be believed that the
plaintiff, dishonestly and designedly, would not pay obli-
gations legally entered into by him and legally enforceable
in the said city of Fremont and throughout said states,
with the intent and purpose to coerce and force plaintiff
against his will, and in violation, subversion, and in disre-
gard of the laws of the state of Nebraska with respect to the
collection and enforcement of money demands claimed by one
person against another, to give up and deliver to the defend-

ant $13.40 of the property of the plaintiff, did theretofore, to-wit, on or about the 1st day of September, 1889, unlawfully, maliciously, wickedly, and secretly combine, confederate, and conspire with divers and numerous persons of the city of Fremont, and also in and through said states, and with them together did maliciously, unlawfully, and wickedly imagine, design, and construct, and did unlawfully, maliciously, and wickedly aid, abet, counsel, and assist in the imagining, designing, and constructing of a certain wicked contrivance known and called "State Abstract of Unsettled Accounts of the Merchants' Retail Commercial Agency of Chicago, and the Retail Merchants' Association of Iowa, Nebraska, and Kansas (Consolidated)," the same being a pamphlet book containing and having therein printed, among other things, the names of sundry and different persons, and secret signs understood and known by the defendant and said persons with said defendant combined as aforesaid, which said secret signs are unknown to plaintiff and plaintiff cannot allege nor describe the same. This amended petition alleged that the known intent, meaning, and signification of said contrivance and book is, that any person whose name is placed, printed, or published therein is unworthy of credit, and does dishonestly and designedly refuse and neglect to pay his debts legally enforceable against him, and it is agreed and made by preconcert among said persons with whom said defendant combined, confederated, and conspired, as aforesaid, a great number of whom are vendors of necessaries of life, goods, wares, and merchandise in said city of Fremont, that none of said persons shall sell to any person whose name is placed in said contrivance and pamphlet book any necessaries of life, goods, wares, or merchandise of any nature whatsoever on credit, under severe penalty to said persons so combined, conspiring, and confederated, as aforesaid among themselves agreed. The amended petition further alleged that on the first day of September, 1889,

Masters v. Lee.

the defendant, intending falsely to cause it to be believed that plaintiff was unworthy of credit and dishonestly and designedly refused to pay his debts and obligations, and to prevent the plaintiff from procuring the necessaries of life and goods, wares, and merchandise on credit, for the purpose and with the intent in so doing to unlawfully coerce and compel plaintiff, against his will, and in evasion, subversion, and disregard of the laws of the state of Nebraska relative to the enforcement of debts and obligations, to give up and deliver to said defendant $13.40 of the property of plaintiff, did unlawfully, maliciously, and wickedly print and publish, and did cause to be printed and published, in the said wicked contrivance and pamphlet book the following wicked, malicious, false, and defamatory libel of and concerning the plaintiff in the words, signs, and figures following, to-wit: " H. W. Masters, Fremont, (note) $13.40," and did unlawfully, maliciously, and wickedly send, distribute, and circulate said wicked contrivance and pamphlet book with the said words, signs, and figures aforesaid therein printed and placed, and did cause the same to be sent, distributed, and circulated, and did procure, aid, assist, counsel, and encourage the sending, distribution, and circulating of said wicked contrivance and pamphlet book to, among, and between the vendors of the necessaries of life, goods, wares, and merchandise, and among other divers good citizens of the city of Fremont and throughout the states of Nebraska, Iowa and Kansas, whereby the said defendant unlawfully, maliciously, and wickedly did publish of and concerning the plaintiff to and among the said vendors and citizens of the city of Fremont and throughout the states aforesaid, that the plaintiff was unworthy of credit, and did and would dishonestly and designedly refuse and neglect to pay his obligations legally enforceable against him, all of which, as published, was understood as aforesaid by said vendors and citizens.   The amended petition thereupon averred that by the aforesaid publication

plaintiff had been injured in his credit and good name and brought into scandal and discredit among the vendors of the necessaries of life, goods, wares, and merchandise, and many divers good citizens in the said city of Fremont and throughout the said states, and that the credit of plaintiff had been greatly injured, and that plaintiff was thereby prevented from procuring any of the necessaries of life, goods, wares, and merchandise from the vendors thereof on credit in said city of Fremont and elsewhere throughout said states, to his great scandal and disgrace, and that he had suffered thereby great anxiety and pain of mind to such an extent that plaintiff was thereby incapacitated from · properly performing the duties of his vocation, by all of which the plaintiff had been damaged in the sum of $2,000, for which he prayed judgment.

In the answer there was a general denial of all the allegations of the petition, except that both the parties, plaintiff and defendant, were citizens of the state of Nebraska, and residents of the city of Fremont. For a second defense it was alleged that on September 1, 1889, plaintiff was and still is indebted to defendant upon a promissory note executed by plaintiff to defendant in the sum of $13.78, and that the defendant, being desirous of collecting said note (plaintiff having refused to pay the same), on or about the month of June, 1889, sent said note to the Retail Merchants' Agency of Iowa, Nebraska, and Kansas for collection, and said association tried to persuade said plaintiff to pay the amount he was honestly owing to said defendant on said note, but plaintiff refused to pay the same; that on said 1st day of September, 1889, plaintiff was and is owing many and divers other persons various sums which he has and does refuse to pay, and that the general reputation of plaintiff was that he was a person who would fail and refuse to pay his honest debts.

By reply the plaintiff denied each averment of the defendant's answer.

Masters v. Lee.

Upon a trial had of the issues joined, there was a verdict for the defendant, upon which judgment was rendered. From this judgment the plaintiff brings the case to this court for review upon his petition in error.

Upon the trial of this case there was evidence—indeed, it was unquestioned—that defendant held plaintiff's note for something over $13, which was long past due; that plaintiff had leased property of the wife of the defendant and thereon had made repairs and improvements for which he claimed he should be reimbursed to such an amount as would offset the note which he owed to the defendant. This offset was denied, and thereupon the defendant sent to plaintiff a letter, of which the following are the material parts:

"This association is established to afford protection in giving credit, and is a safeguard against those who contract debts and do not pay or adjust the same. Our members are furnished a list of parties who contract debts and fail to pay or make settlement, each member of the association agreeing to refuse credit to any one whose unsettled account appears on said list until settlement of said claim against him has been made and noted by this association.

"LOCAL BRANCH AT FREMONT, NEB., July 20, 1889.

"*Mr. H. W. Masters, Fremont, Nebraska*—DEAR SIR: We are members of the above association, which, as you will observe, is organized for the purpose of affording protection to retail merchants against that class of persons who have no regard for their promise to pay. Your unsettled account due us now amounts to 13.40 dollars. We shall regret being forced by your neglect to place the account in the hands of the above association for adjustment. Unless you call upon us within ten days from the date hereof and pay the amount due, or pay part of it and arrange for payment of the balance, or give us some reason why you cannot settle it in whole or in part, we shall certainly place the account in the general office of the Retail

Merchants' Association at Des Moines, Ia., for collection, and after doing so you must not blame us if your credit is stopped in your town, county, and state.

"Hoping to hear from you within the time specified,

"Yours respectfully,        H. J. LEE."

About a month after the receipt by plaintiff of the above letter he received another, having the same letter-heading as that just set out. This last letter was in the following language:

"DES MOINES, IOWA, 8–22, 1889.

"*Mr. H. W. Masters, Fremont, Neb.*—DEAR SIR: We have in our hands for adjustment a claim against you in favor of H. J. Lee of Fremont, amounting to $13.40. Said firm has several times requested that you in some way make settlement. Can and will you give us a plausible reason why you neglect to do so? Is there anything wrong with the account as presented, and if so, in what particular? We represent an organization of the retail merchants of your town, county, and state, whose sole object is to protect themselves from giving credit to any person who, being indebted to a member of this organization, will not in some way make an effort to honorably adjust such indebtedness. Can you afford to have credit denied you? Will it not be a source of satisfaction for you to have this claim settled? We shall expect a satisfactory adjustment within the next ten days. Notify this office by postal card if you settle the claim. Trusting you will give this your immediate attention and save us the unpleasant duty of proceeding further, we remain

"Yours truly,

"THE RETAIL MERCHANTS' ASSOCIATION,

"Per J. W. MARTIN, *Gen. Secy.*"

In the brief for plaintiff in error there are indications that the letter last referred to was sent to the plaintiff in an envelope upon which was a return card requiring the return of the letter, if not called for in a specified time, to the agency,

which was described as one for the collection of bad debts. We can give no more definite description than this of the said envelope, for it is not to be found in the bill of exceptions and the case must be determined without reference to the alleged envelope.    There seems to have been no other correspondence than the above carried on in relation to this claim as between the plaintiff and the defendant or the Merchants' Retail Commercial Association.    In the state abstract of unsettled accounts of the agency last named, issued for the month of September and December, respectively, of the year 1889, there appears under the head of Dodge county the following entry: "Masters, H. W., Fremont, (note) $13.40."    It is proper to explain that the note referred to was originally for $13.78, upon which some interest had accrued, but which by reason of a credit on the note of date May 13, 1885, was reduced to $13.40. This accounts for the apparent discrepancy in the amounts of the note referred to.    The headings of the letters, to which reference has been made, indicate to some extent the object of the organization known as the "Retail Merchants' Association of Nebraska (Iowa and Kansas)."    The constitution and by-laws of the organization just referred to were introduced in evidence, and under the head of "membership" the 3d and 4th sections thereof read as follows:

"Sec. 3.  It shall be obligatory upon each member promptly to report to the Retail Merchants' Association of Iowa, Nebraska, and Kansas at its general compiling office in Des Moines, Iowa, the name of every person who shall settle his account after being placed in the hands of the association for adjustment.

"Sec. 4.  Whenever an account against any person shall have been listed in the abstract of unsettled accounts issued by our general association, or certified to the secretary of this branch by said association as unsettled, no member shall in any case open an account without security with such delinquent, and the opening of such an account by

any member with such person shall be considered a misdemeanor and subject such member to an investigation by the executive board, and if found guilty he shall pay to such board a fine of $20.00 for the sole use and benefit of this branch, and his neglect or refusal to comply with this demand shall make him liable to expulsion from said association."

There was introduced in evidence a notice, of which the name of the association, the word "penalty" just preceding a copy of section 4, just referred to, which was printed on said notice, and the character and figures "$20.00" in said section 4 were in very large display type. It was shown by the testimony that this notice, which was of the dimensions of about 14 by 20 inches, was publicly posted in the place of business of some of the members of the Retail Merchants' Association at Fremont, Nebraska. A membership certificate in the Retail Merchants' Association of Iowa, Nebraska, and Kansas was introduced in evidence, from which it appears that a membership fee of $8 was required as a condition for joining the association, and there was also required the payment of $1 from each member for each quarterly abstract of unsettled accounts upon deliveries which were to be made in March, June, September, and December of each year respectively. The quarterly abstract for the month of December, 1889, covered 123 pages, either in whole or in part, and on each full page were printed 47 names with notice of the same sort of complimentary character as that which followed the name of the plaintiff in this suit. Following the names printed under the above heading, there were 58 pages devoted to requests for the addresses of the several parties named whose letters had been returned to the Retail Commercial Agency as uncalled for. On the outside of the last page or cover of each quarterly abstract of unsettled accounts of the Retail Merchants' Commercial Agency is given what is probably a correct statement of its main purpose.

It is in the language of section 4 above quoted. If this was not its only object, it certainly was conspicuous as its main object, for it appears in the notices posted in the places of business of the respective members of the association, and upon each quarterly abstract, in such a way as to preclude all possibility of being ignored. This object was to deprive any person whose name should appear as a delinquent in any of the quarterly reports from obtaining credit from a member of the association without his giving security, under a penalty to such member, in case of non-compliance with this condition, of the payment of $20 and the possibility of his being expelled from the association. To attain this unenviable distinction it was only necessary that any person who claimed to have an account against another should have it listed in the abstract of unsettled accounts issued by the general association, or certified to the secretary of the branch to which he belonged, as unsettled. There was no method provided by which it might be ascertained whether or not the account was just or unjust, whether paid or unpaid, the person reporting the account not even being required to pay any extra expense for the purpose of publishing the name and failure to pay of the alleged delinquent. As indicated in the letter of August 22, 1889, to Mr. Masters, the only way open to him whereby might be avoided the unpleasant publicity given by the quarterly reports was that he should pay or settle the demand made.

The instructions of the court, aside from a mere summary of the issues and the duty of the jury in construing the evidence given, were all devoted to a consideration of the law of libel and the rules with reference to publications which were claimed to be libelous. Of the class last described there were nine instructions given by the court upon its own motion, and four given at the request of the defendant with respect to the same branch of inquiry. It is no part of our purpose to criticise these instructions

so far as they apply to the alleged libelous nature of the transactions complained of, for as to that branch of the case they were probably correct. The court, however, refused an instruction asked by the plaintiff which was in the following language: "If you find from the evidence that the defendant caused the name of plaintiff to be placed in the book to be circulated among the merchants of the city of Fremont and elsewhere in the states of Nebraska, Iowa, and Kansas, to stop the credit of plaintiff and to thereby compel plaintiff to pay to said defendant the sum of $13.40, and that thereby the credit of plaintiff was injured, then the defendant is liable, and you will find for the plaintiff and assess such damages as the plaintiff has sustained as shown by the testimony." To the refusal to give this instruction a proper exception was taken. In one view of the case, it is perhaps correct to assume that the inquiry was proper as to the alleged libelous nature of the printing and publication, as to which there is no contradiction in the evidence. The petition, however, was not for the recovery of damages arising from the libel alone, it was for the recovery of such damages as should compensate plaintiff for the refusal of dealers in the necessaries of life, goods, wares, and merchandise to extend to him such credit as, but for the publications referred to, he would have been accorded.

The case of *Muetz v. Tutuer*, 77 Wis., 236, was one wherein was involved transactions of the same nature in which was concerned as the principal party an agency of the same character and with the same purposes as those of the Retail Merchants' Commercial Agency under consideration in this case. It was there held that the sending of letters with a return card upon the envelope containing the words "for collecting bad debts," was an imputation of dishonesty, and that the distribution of a book among the members with the plaintiff named in the black list of bad creditors constituted a sufficient publication of a libel. That

element, however, is not presented to us for consideration
in this case, for the reason that upon that phase there were
full and proper instructions to the jury.  No qualification
seems to have been required as a condition precedent to the
right of any one to become a member of the association.
For that purpose the only prerequisite was the payment of
$8 or $10 in advance and the further payment of $1 for each
quarterly abstract as it was issued.  This gave to each mem-
ber the right to report the name of any person against whom
such member justly or unjustly claimed to have a demand.
The party against whom the claim was made had no right
to be heard.  His name must be published or he must pay
whatever was claimed against him.  If his name appeared
in the "black list," which is but a proper designation for
the so-called "quarterly abstract," his credit was destroyed
with every member of the association.  The evidence in
this case showed that in the city of Fremont, where the
plaintiff and defendant both lived, there were from thirty
to thirty-two members of the association in question.  From
the publication of the plaintiff's name in the black list, it
resulted that at from thirty to thirty-two different places of
business in the city of which he was a resident the proprie-
tors were bound under a penalty to extend no credit to him,
no matter what explanation he might give, what defense he
might have, or what the real facts of the case might be.
As to this there was allowed no opportunity for investiga-
tion or adjudication.  The law, from considerations of pub-
lic policy, allows each defendant, the head of a family, cer-
tain exemptions.  These exemptions are not for the purpose
of enabling him to defy his creditors, but are rather deemed
proper for the protection of his family.  The association in
question ruthlessly ignored both the policy and the letter of
this law.  By it there was allowed to the defendant neither
the opportunity to allege and prove a defense nor the right
of an impartial trial by jury, and the exemptions as to
which the holder of the claim had no right, either equitable

or legal, were absolutely denied the so-called "defendant." The holder of the claim, by the payment of $10 in advance and thereafter $4 annually, became a privileged member of the self-constituted society, which was at once the plaintiff, the judge, the jury, and the executive officer, before which the alleged defendant had not even the poor privilege of being heard. His only recourse was to pay the claim, whatever its nature and whatever might be his just defense. It seems to us that when an individual becomes a member of such an association as this, he should be held as a co-conspirator and not merely as the author of a libel. Counsel for defendant in error insist that the plaintiff in this case has no right to complain, because every man should pay his just debts. Probably this is true, and yet, in a case like that at bar, who is to determine what just debts are due? Manifestly there is no determination of this fact except by the holder of the claim himself. If he shall set in motion such a contrivance as this which we have under consideration, and a damage results to the party whose name he has handed in to be dealt with, he should respond in damages, irrespective of the rules of law governing mere libelous publications. The court erred in refusing to give the instruction asked by the plaintiff in error, and its judgment is therefore

REVERSED.