## Fry v. McCord Bros.

### (*Nashville.* December 21, 1895.)

1. AMENDMENT. *Of declaration properly allowed.*

   A declaration in an action for libel may be amended a sufficient length of time before trial, so that the defendant will not be surprised or prejudiced, by adding averments which merely show the purpose and object of the defamatory publication in a different and more specific manner. (*Post, pp. 680–683.*)

2. LIBEL. *Whether language is libelous per se is a question of law. Demurrer.*

   The question whether the language declared upon in an action for libel is libelous *per se*, is one for the Court to determine, and is properly raised by demurrer, where the language is unambiguous in itself and no special damages are alleged. (*Post, pp. 682–684.*)

   Cases cited and approved: Bank v. Bowdre, 92 Tenn., 740; Banner v. State, 16 Lea, 176.

3. SAME. *When words are libelous per se.*

   Words which, upon their face, and without the aid of extrinsic proof, are injurious, are libelous *per se;* but if their injurious character appear, not from their face, in their usual and natural signification, but only in consequence of extrinsic circumstances, they are not libelous *per se.* (*Post, pp. 684, 685.*)

   Case cited and approved: Bank v. Bowdre, 92 Tenn., 736.

4. SAME. *Declaration insufficient.*

   A declaration in an action for libel is insufficient which neither avers words actionable *per se*, nor special damages. (*Post, pp. 685, 686.*)

5. SAME. *Language held not to be actionable per se.*

   The publication in an abstract of unsettled accounts issued by a

Fry *v.* McCord Bros.

commercial agency, of a memorandum that a person not a merchant or trader is indebted in a certain sum, in connection with a special notice to the effect that the information is furnished in strict confidence, for the exclusive use and benefit of the subscriber, is not libelous *per se*. (*Post, pp. 680–682, 685, 686*.)

Cases cited: Bank *v.* Bowdre, 92 Tenn., 723; 53 Am. R., 9.

6. SAME. *Special damages not sufficiently averred.*

Special damages are not well pleaded by the general averments in a declaration in an action for libel, in publishing that there was an unsettled account against plaintiff, to the effect that plaintiff was damaged in a specified sum, and that the purpose of the publication was to cause him to be suspected and believed to be without integrity and unworthy of credit or public confidence and social intercourse; and that he was greatly injured in his good name and credit and brought into public scandal, infamy, and disgrace, and was prevented from procuring any of the necessaries of life, and has suffered great anxiety and pain of mind, and become incapacitated for business. (*Post, pp. 686–691*.)

7. SAME. *Rule as to special damages.*

When a publication is not libelous *per se*, special damages must be alleged and proven, in order to sustain the action. And the pleadings must aver, and proof show explicitly, each item of special damages and how it was sustained. (*Post, pp. 688–690*.)

Cases cited and approved: Bank *v.* Bowdre, 92 Tenn., 734; 17 N. Y., 54.

8. SAME. *Publication of.*

An action for libel does not lie, for want of publication, in favor of one who receives and alone reads a letter containing libelous matter against himself. But a criminal prosecution for libel does lie in such case. (*Post, pp. 691, 692*.)

Code construed: § 5552 (M. & V.); § 4762 (T. & S.).

Cases cited: Hodges *v.* State, 5 Hum., 112; Swindle *v.* State, 2 Yer., 581; State *v.* Hollon, 12 Lea, 482; 18 Am. Dec., 105.

9. SAME. *Same.*

The mere sending of a libelous writing through the mails in an

Fry *v.* McCord Bros.

unsealed envelope, does not constitute a publication thereof that will sustain a suit for damages. (*Post, pp. 692–694.*)

Cases cited and distinguished: 20 Am. St. Rep., 120; 39 Neb., 574.

FROM GILES.

Appeal from Circuit Court of Giles County. D. W. BROYLES, Sp. J.

FUSSELL & WILKES, W. J. WEBSTER, R. P. ABLES, and M. & E. E. ESLICK for Fry.

W. H. McCALLUM, Z. W. EWING, FLOURNOY RIVERS, and H. R. STEELE for McCord Bros.

WILKES, J. This is an action for libel. It was tried in the Court below before the Judge and a jury, and a verdict and judgment were rendered for the plaintiff for $400 and costs, and defendants have appealed and assigned errors.

In support of the action, it is alleged that four letters were sent to plaintiff, through the mails, in unsealed envelopes, by the Merchants' Retail Commercial Agency, of Atlanta, Ga., and Chicago, Ill., Atlanta being a branch office. After the last letter was sent to the plaintiff, it is alleged that, in pursuance of a threat contained in it, plaintiff's name was caused to be published in a certain book or pamphlet. Upon the title page of this pamphlet

appears printed these words: "The Merchants' Retail Commercial Agency, Chicago, Illinois, incorporated under the laws of Illinois. Abstracts of unsettled accounts in and for the counties indicated on the following pages." The following memorandum appears in the body of the pamphlet: "Fry, J. P., Far., Lynnville, Giles County, Tenn., $69.75. Claims marked (*) are outlawed." There also appears in the pamphlet the following: "SPECIAL NOTICE.—This information is furnished in strict confidence, for your exclusive use and benefit, under and subject to the terms and conditions of your subscription to this agency. All abstracts remain the exclusive property of this agency, and are only loaned to you during the period covered by your membership, at the expiration of which they must be surrendered. If any of the within claims have been settled, please advise the agency promptly relative thereto, and the secretary of your local board."

It is averred that this publication is libelous *per se;* that it was intended to be circulated among the members of the association throughout the county of Giles, where plaintiff lives, and elsewhere, and that its meaning was that plaintiff was indebted, by account, in the sum of $69.75, and was evading payment of the same; that he was lacking in integrity, and unworthy of credit; that he was a "dead beat," a swindler, a common cheat, and a man who made debts not intending to pay them, and that it was so understood among the members of the association.

By an amended declaration contained in a fifth* count, the publication is set out in detail, and it is averred that plaintiff entered, with others; into a conspiracy to publish, and did publish, plaintiff as a swindler, "dead beat," etc., for the purpose of collecting from him the debt of $69.75. Defendants objected to this amendment adding the fifth count to the declaration.

The declaration, as thus amended, was demurred to, and the demurrer overruled, when defendant plead "not guilty," and also a special plea of justification, admitting the publication of the words in the pamphlet, but denying the defamatory meaning sought to be attached to them, and denying all responsibility or authority for the letters. While the letters are alleged to have been sent by mail, in open envelopes, to plaintiff, it is not averred that they were ever read by anyone but plaintiff.

It is insisted that the publication must be read in connection with the letters, and that they form parts of the same scheme, and, taken together, are libelous and actionable. On the other hand, it is insisted that the pamphlet is the only publication, and that the letters were never published, but can only be used to interpret the meaning of the pamphlet, if authorized at all.

We do not think there was any error in allowing the fifth count in the declaration to be filed. It was in ample time before the trial not to operate as a surprise or to prejudice the defendants,

and the matter of it is germane to the matter of
the original declaration, and only adds to the purpose
and object of the defamatory publication in a dif-
ferent and more specific manner.    There can be. no
doubt but that, taking the pamphlet and letters to-
gether as parts of one publication, if both are pub-
lished and so averred, and giving to the words the
meaning alleged. in the declaration, the matter would
be libelous and actionable *per se*.    It is contended,
however, that the letters were never published nor
authorized, and that the matter in the pamphlet is
not libelous *per se*, and that no special damages are
alleged in the declaration, and none shown in the
proof.    It is therefore insisted that the demurrer
should have been sustained, and the suit dismissed,
because the matter in the pamphlet is not libelous
*per se*, nor is it alleged that the letters were pub-
lished, nor that any special damages resulted.    The
contention is that the words in the pamphlet simply
meant what they said, and no more—that is, that
plaintiff owed an account of $69.75, and that such
words alone were not defamatory or prejudicial to
plaintiff, nor calculated or intended to provoke him
to wrath, but only to give information to members
of the association, to enable them. to extend or
withhold credit as they might see fit, and thus
protect them in their business in a legitimate way.
The gist of the matter presented by the demurrer
is that the publication was of the pamphlet alone,
and not also of the letters; that the pamphlet was

not libelous *per se*, and, no special damages being, alleged, the action could not be maintained.

The first important question that arises is, Are the words, as published, libelous *per se?* This is a question· for the Court to determine, and is properly raised by demurrer when the language is unambiguous in itself. *Bank* v. *Bowdre*, 8 Pick., 740; *Banner* v. *The State*, 16 Lea, 176.

It has been held that, in order to constitute language libelous *per se*, it must be "either such as necessarily, in fact or by presumption of evidence, occasions damage to him of whom or whose affairs it is spoken." Townshend on Slander and Libel (4th Ed.), Sec. 146; Newell on Defamation, p. 181, Sec. 14. "Such language confers a *prima facie* right of action, and is *prima facie* wrong and injurious *per se*, and the law will presume damage without proof, merely from implication or presumption from the publication." Townshend on Slander and Libel (4th Ed.), p. 147. "Language which, however, does not, as a necessary consequence, occasion damage to the party published is not, *per se*, libelous, and, in such cases, a right of action exists only when, as a necessary and proximate consequence of the publication, special damage ensues to the party published." Townshend on Slander and Libel (4th Ed.), Secs. 146–148; *Bank* v. *Bowdre*, 8 Pick., 736.

We think a statement· in substance and effect the same, but in different language is, that words which, upon their face and without the aid of extrinsic

proof are injurious, are libelous *per se*, but if the injurious character of the words appear, not from their face in their usual and natural signification, but only in consequence of extrinsic circumstances, they are not libelous *per se.* In such cases, the words are said to require an innuendo—that is, a statement of circumstances which give to the words a signification and meaning which they do not have on their face, but which cannot enlarge, extend, or change the sense of the words. Newell on Defamation, p. 619, Secs. 34, 35.

If the words published are libelous *per se*, damages follow as a matter of law in some amount, and the jury must fix that amount in view of all the surrounding circumstances. If not libelous *per se*, then they are not actionable in the absence of an allegation of special damages, and the suit must be dismissed.

Looking alone to the words contained in the pamphlet, we are of opinion that, taken in their ordinary and usual and natural sense and meaning, they are not libelous or injurious on their face or *per se.* We are also unable to see anything libelous in the special notice clause of the publication in the pamphlet, or in the instructions, unaided by extrinsic proof. The striking out of the name of a party who had paid his debt could not be injurious. It has been repeatedly held that information as to the standing of merchants, business men, and other individuals can properly be furnished by a

mercantile agency, for information to its · clients or customers, and it is not actionable, unless false, defamatory, or injurious in itself.　See the authorities. collated in 13 Am. & Eng. Enc. L., 414, note 1. It has likewise been held that a publication that a party "owes a debt," without more, is not of itself sufficient to make the publication libelous (especially when such person is not engaged in business), but such words may be made libelous by proof of extraneous circumstances if special damages are shown. They do not, however, without such extrinsic proof, imply dishonesty, and are susceptible of an innocent as well as a defamatory interpretation. *Zier* v. *Hofflin*, 53 Am. Rep., 9; Odgers on Slander and Libel, star page 81.　See, also, Newell on Defamation, Sec. 37, page 195.

This holding is not in conflict, but in accord, with the case of *The Bank* v. *Bowdre*, 8 Pickle, 723, where the injurious· and libelous character of the publication clearly appeared from the words on the postal card, and were published of merchants in active business; nor is it in conflict with the other cases cited by plaintiff's counsel as illustrations of· language actionable and libelous *per se.*

The next important question then arising is whether there is any allegation of special damage made in the declaration.　It is not alleged that plaintiff was a merchant or engaged in trade or business at the time of the publication and that damage was done him in business or trade when the words were pub-

lished. The first count in the declaration, as well as the third, alleges no special damages, the first simply saying that plaintiff was damaged $5,000, and the third, that the purpose was to cause him to be suspected and believed to be without integrity and unworthy of credit or public confidence and social intercourse, but it wholly fails to allege, even in a general way, that any of these results actually followed or was caused by the publication. In other words, the allegation is that the purpose was to injure, but there is no allegation that any injury ensued, as a matter of fact, even in a general way.

The second and fifth counts allege that plaintiff is greatly injured in his good name and credit, brought into public scandal, infamy, and disgrace, and that he was prevented from procuring any of the necessaries of life—goods, wares, and merchandise—from the vendors thereof, and that he has suffered great anxiety and pain of mind, and become incapacitated for business, and hence is damaged $5,000; but there is no statement of any instance in which his credit was impaired or credit was refused him or in which he failed to procure the necessaries of life, or any other particulars, nor any names of any persons given, nor any reason given for the failure to give names or identify persons. These general allegations of damage would be sufficient if the words were libelous *per se*, but, if the words are not actionable *per se*, are they sufficiently definite as allegations of special damage?

The fourth count was stricken out on demurrer. As to what constitutes special damage, and what is meant by special damage, has been the subject of much adjudication. It is said "special damages are such as the law will not infer from the nature of the words themselves." And again, "the plaintiff must show that his character has suffered from defendant's false assertions, and he can only show this by giving evidence of some special damage." Newell on Defamation, etc., p. 849. "Loss of customers is special damage, and must be specifically alleged, and the customers' names stated. An indefinite loss of business is considered general damages, and can only be proved where the words are spoken of the plaintiff in the way of his trade, and, then, are actionable in themselves." Newell on Defamation, Sec. 43, p. 868; Newell on Defamation, p. 634, Sec. 49; Odgers on Slander and Libel, star pages, 302, 303.

As to pleadings, it is held: "When a publication is not libelous *per se*, special damages must be alleged and proven in order to sustain the action." *Bank* v. *Bowdre Bros.*, 8 Pick., 734, 735; Townshend on Libel and Slander, p. 580, Sec. 345; Newell on Defamation, p. 856, Secs. 28, 29, p. 866, Sec. 39; 13 Am. & Eng. Enc. L., p. 435; Sutherland on Damages, Sec. 1215. "An allegation stating generally that, in consequence of the defendant's words, plaintiff has lost a large sum of money, or that his practice or business has declined, is not sufficiently precise." Newell on Defamation, etc., p.

Fry v. McCord Bros.

869, Sec. 41; Odgers on Slander and Libel, star page, 302. "The names of the persons who had ceased to employ plaintiff, or who would have commenced to deal with him had not the defendant dissuaded them, should be set out in the statement, and they themselves called, as witnesses, at the trial to state their reasons for not dealing with plaintiff, for their withholding custom may be due to other causes. If the plaintiff cannot give the names of those who have ceased to deal with him, and cannot prove that their ceasing to deal with him is due to defendant's words, he must fail in the suit, although there has been a falling off in his business." Newell on Defamation, p. 867, Sec. 41. "Special damage must be explicitly claimed in the pleadings and proven at the trial, and the plaintiff is confined to his special damage laid, and he must prove them as laid, or fail in his suit, as there are no general damages to which he can have recourse, and the jury will be confined to such special damage as is shown by the pleadings and evidence. They cannot lawfully compensate the plaintiff for pain, mental anxiety, or general loss of reputation in cases where the words are not actionable themselves, but must confine the assessment to the actual pecuniary loss strictly as alleged and proved." Newell on Defamation, Sec. 39, p. 866; 3 Sutherland on Damages, Sec. 1215; Odgers on Slander and Libel, star page, 302. "The damage must be alleged with so much of certainty that the defendant may be able to con-

44—11 P

tradict it if untrue." Newell on Defamation, 866, Sec. 40.

The whole subject is fully reviewed in the case of *Terwilliger* v. *Wands*, 17 New York, 54, reported in 72 Am. Dec., page 420, and the notes thereto, pages 426 to 436. In this case, if special damage had been alleged, the letters sent to plaintiff, if authorized, as well as the parol proof as to the meaning of the words and the circumstances surrounding their publication, could all be taken into consideration to show the meaning of the words published, but as no publication of the letters is alleged, and no special damages averred, we can only look, as we have done, to the words in the pamphlet, to determine whether they are libelous *per se* or not. The reason and sound policy of this rule of pleading is well illustrated by the facts' developed in this record, for there is no proof whatever that plaintiff was damaged in his credit by the publication. His credit had been impaired for several years, and gradually grew worse, and, some year or more before the publication, he failed, and after that, as well as after the publication, his credit continued to grow worse, but he states himself that he does not know whether the continued and increasing decline in his credit was caused by the publication or by the fact, which became generally known, that he had failed, and there is an utter want of proof of any single instance in which credit was denied him or that he was denied any of the necessaries or

comforts of life in consequence and as a result of the publication.

It is proper to state that there is a marked difference between civil and criminal actions for libel, so far, at least, as the question of publication is concerned. In the former, publication must be made to some third person or in such public manner as to reach third persons, but in criminal proceedings, publication may be made by communicating the printed matter alone to the party libeled. Code (M. & V.), § 5552; *Hodges* v. *The State*, 5 Hum., 112; *Swindle* v. *The State*, 2 Yer., 581; *The State* v. *Hollon*, 12 Lea, 482; Newell on Defamation, p. 236, Sec. 6; Townshend on Slander and Libel, Sec. 198, note 4. The reason for this difference is that, in a civil action of libel, the gravamen of the action is the pecuniary damage to the character or credit of the party libeled, but in a criminal action the ground of the offense is the liability of the words written to provoke a breach of the peace. In the civil action the only publication that could injuriously affect the credit and character is that made to third persons, as no damage to credit or character could result from a letter or writing known only to the party to whom it is sent and not communicated to others. *State* v. *Avery*, 18 Am. Dec., 105. In criminal actions, however, it is evident that the liability to provoke a breach of the peace is as great when the letter is seen only by the party to whom it is sent as it is when communicated to others.

Hence it has been held that an indictment must charge that the intention in sending the letters was to provoke a breach of the peace when the fact is that such letters have not been read or seen by some third person. *Hodges* v. *The State*, 5 Hum., 112.

Again, as to the mode of publication, it has been held that sending a libel on a postal card is a publication, inasmuch as the writing is open ⋅ to the inspection of others besides the party to whom it is addressed. Newell on Defamation, p. 246, Sec. 26; Townshend on Slander and Libel, p. 418. But we have been cited to no authority holding that the sending of a writing in an unsealed envelope, to the party himself, stands upon the same ground, and becomes a libel in a civil sense, in the absence of averment and proof that it was read or heard read by others, and we are of opinion, in the absence of such averment and proof, such letter is not a publication upon which a civil action can be based. Newell on Defamation, p. 238, Sec. 10; Townshend on Slander and Libel, Secs. 96, 101, 108. The cases of *Mentze* v. *Teuter*, 20 Am. St. R., 120, and *Masters* v. *Lee*, 39 Neb., 574, are cited and strongly relied on by plaintiffs. The latter case appears not to have been decided upon the ground of the libelous character of the publication, but rather ῾upon the idea that the defendants had entered into an illegal conspiracy, by which they obligated themselves not to credit persons listed in the publication, under penalty of a fine of twenty dol-

lars, and this was the prominent feature of the association, and printed on the outside of the publication, and no opportunity was to be allowed the party published to explain. We cannot consider this case as authority, even if it were in point. The case of *Meutze* v. *Teuter*, 20 Am. St. R., 120, is more nearly in point, but there are material differences between that case and the present in many important particulars. In that case the party published was a jeweler, in active trade, and the publication touched him in his business; here there is no allegation that the plaintiff was a merchant or trader. In that case the party libeled claimed defenses against the debt; none are averred in this case. In that case the letters were inclosed in red envelopes, which had matter printed on their backs, in large type, to attract special attention, showing they were being used to collect bad debts. There was nothing averred to have been upon the backs of the envelopes used in this case. The pamphlet had printed matter on its face, to the effect that the association was not a "collecting agency," but used its influence to make debtors pay their debts, which is wholly wanting in this case. It was held that the matter printed on the backs of the envelopes in that case was libelous, as it could have been, and probably was, read by persons not members of the association, and, hence, the letters were held to be published. It appeared that the pamphlet, in that case, went into the hands of persons outside of the

association, which is not averred in this case. So that, if we should agree with the conclusion of the Court in that case on the facts stated, still it is a very different case from the one at bar, and not conclusive or strongly persuasive.

We think it proper, also, to notice some statements made in the text of Newell on Defamation, p. 856, Sec. 28, and p. 867, Sec. 42. It is there stated, in general language, that it is not necessary to prove special damages in any action of libel, and that no averment of actual damages of any kind is essential, inasmuch as the law infers it to have occurred in such cases. The language found in the first of these references is copied, literally, from Odgers on Libel and Slander, star page, 297. If it is intended to hold, by this general language, that in no case of libel is it necessary to allege special damages, it is opposed to the entire text of both writers, and is not sustained by any authority whatever in the way of adjudicated cases. The only case cited in support of the text is in Newell on Defamation, 867, Sec. 42, being the case of *Ingram v. Lawson*, reported in 6 Bing. (N. C.), 212. Upon an examination of that case, it will be found that it is in no sense an authority for the general statement made that in no case of libel is it necessary to allege special damages. In that case the publication was made of a ship merchant and owner actively engaged in trade, and touched his business as such merchant and trader injuriously. In all such cases it is universally held that the language is libelous

*per se*, and hence no allegation of special damage need be made, and this decision is placed by all the Judges upon the ground that the words were published of a merchant and trader, and, for that reason, no allegation of special damage need be made. The text referred to is not sustained by this or any other authority, in the broad sense which its language imports, and is contrary to the unbroken weight of authority that, in libel as well as in slander, there must be allegation and proof of special damage when the words are not actionable *per se.* It is everywhere held, and universally conceded, that words spoken or written of persons engaged as merchants or traders may be libelous and actionable *per se* if they touch them in their trade, when they would not be of a person not a merchant or a trader. Newell on Defamation, p. 68, Sec. 8; Newell on Defamation, p. 864, Sec. 36; Townshend on Slander and Libel, Sec. 132, p. 116; Townshend on Slander and Libel, Sec. 179, p. 221.

It follows that the publication in this case, being only of the matter in the pamphlet, and the plaintiff not being averred to be a merchant or trader, and the words not being libelous *per se*, and no special damages having been alleged to justify proof of extrinsic circumstances, there was no proper cause of action stated in the declaration, and the demurrer should have been sustained, and suit dismissed in the Court below.

The judgment of the Circuit Court will therefore be reversed, and suit dismissed at plaintiff's cost.