## I. B. WILSON v. OLIVER H. GADD.

Western Section.   January 14, 1927.

Petition for Certiorari denied by Supreme Court.   June 11, 1927.

1.   Appeal and error.  The verdict of the jury will not be reviewed by the appellate court if there is any evidence to support it.
     The jury is at liberty to accept the testimony of one witness as against four and notwithstanding the fact that the appellate court might feel that the jury had not weighed the evidence well, it will not reverse the case on that account.

2.   Slander.  Slander per se defined.
     To be slanderous per se under the law in Tennessee the language on its face and without extrinsic proof of what was meant or how it was understood must be injurious.  And if the injurious character of the words do not appear upon their face when taken in their usual and natural significance, but only in consequence of extraneous circumstances, they are not actionable per se.

3.   Slander.  Evidence.  Unless the words are slanderous per se special damages must be pleaded.
     Where the words charged are not slanderous per se and there is no allegation of special damages, evidence in regard to damages is inadmissible.

4.   Slander.  Instructions.  Charge of the court held erroneous because it did not require the jury to find that the plaintiff had proved the language alleged.
     In an action for slander where the charge of the court did not require the jury to first find that the language alleged to have been used was in fact used, held to be reversible error.

Appeal in Error from Circuit Court of Shelby County; Hon. A. B. Pittman, Judge.
Reversed and remanded.
Yandell Haun, of Memphis, for plaintiff in error.
Stickley & Fitzhugh, of Memphis, for defendant in error.

HEISKELL, J.   This was an action for an alleged slander.  It was originally brought against I. B. Wilson and C. G. Dean, as individuals and as partners, trading as the Quality Laundry; but upon motion at the close of the plaintiff's proof it was dismissed as to C. G. Dean, as an individual.

And at the close of all the proof, after motion had been made, a voluntary nonsuit was taken as to the partnership.  The suit thereafter remained against I. B. Wilson, as an individual.

The declaration alleged that the plaintiff in error, Wilson, said of and concerning the defendant in error that "one of the drivers of the Success Laundry, Inc., of Memphis, Tennessee, had taken a bundle

of laundry off a truck belonging to the Quality Laundry in the alley back of the old Hill home, and that the driver's name was Gadd.'' The declaration also alleged that the meaning of said language used by Wilson was that defendant had stolen said bundle of laundry and was guilty of larceny.

To this declaration there was filed a plea of not guilty.

There was a trial by a jury and a verdict for the plaintiff below for the sum of $3500.

It is undisputed in the record that one Hamilton was the driver of a laundry truck belonging to the Quality Laundry, of which I. B. Wilson, the plaintiff in error, was one of the owners. On October 5, 1925, Hamilton drove his truck into an alley back of what is or was known in Memphis as the old Hill home, located on Madison avenue just east of Third street.

In this alley, at the time Hamilton drove in and stopped, were a wagon and two horse team, but with no driver, and the Success Laundry truck, of which Gadd, the defendant in error, was the driver, who, at the time, was just entering the same or some near-by house a little ahead of Hamilton—both drivers being in the vicinity to collect laundry.

Hamilton, the driver of the Quality Laundry truck, remained in the house into which he had gone, some ten or fifteen minutes.

When he came back to his truck, Gadd and his truck, and the team and wagon had left, and a bundle of laundry which Hamilton had left on the fender of his truck was also gone.

Thereupon Hamilton went immediately to a telephone, called up Wilson at the Quality Laundry and reported the facts to him as stated above, except Wilson was not advised at that time that Gadd was the driver of the Success Laundry truck. This information was given to Wilson when Hamilton reached the laundry shortly afterwards.

Wilson, from the Quality Laundry, called for Mr. Harrison, owner of the Success Laundry, but Harrison was not in.

Shortly after Hamilton had reached the Quality Laundry, Mr. Harrison, at the Success Laundry, answered Mr. Wilson's previous call, and there was a conversation between the two—Harrison and Wilson—about the disappearance of the bundle of laundry. It was out of this conversation that this lawsuit grows.

It is shown, by Mr. Harrison himself, that the best of feeling and fellowship had existed between him and Mr. Wilson, and the two laundries worked in harmony with each other when either needed the assistance of the other.

It is further shown that laundry was at times, taken by the wrong laundry drivers, and sometimes it was intentionally done, and that there was nothing unusual in the interested parties looking into it.

Up to this point there seems to be no controversy about any fact stated.

There is a conflict, however, between Harrison, who testified for the plaintiff below, and Wilson, the defendant below, as to the language, used by Wilson over the telephone.

Mr. Harrison substantially supports the allegations of the declaration as to what was said.

Wilson, on the other hand, says he did not say what Harrison says he did; that he did not charge or intend to charge that Gadd had stolen the laundry, but "related the circumstances of the truck and wagon being in the alley, and the bundle of laundry being gone, and told him it was Gadd's truck that was in the alley, and asked him to look and see when Gadd came in if he got the laundry, or if he could find out anything about it."

The defendant Wilson has appealed and assigned errors.

The first assignment is that there is no evidence to support the verdict at least for substantial damages and the second assignment is that the evidence preponderates against the verdict.

The first assignment raises the same question raised by other assignments after the second and will be considered with them. As to the second assignment, it is true Harrison's testimony stands alone to support the declaration, while there are three witnesses who corroborate the testimony of Wilson. The jury, however, was at liberty to accept the testimony of one witness as against four and notwithstanding we might think the jury had not weighed the evidence well, we could not reverse on this account. This assignment is accordingly overruled. It is contended for appellant, however, that the conduct of the case between court and jury was such that it cannot be determined just what the jury found the facts to be.

The first, third and fourth assignments go to the question that the language alleged in the declaration is not slanderous per se and that no special damage having been alleged none could be proved. Therefore all testimony as to special damage should have been excluded.

Counsel for plaintiff now insist that the language alleged to have been used was slanderous per se. Also they say that the defendant did not object to the testimony as to special damages at the proper time. A quotation from pages 24-25 of the transcript bears upon these contentions:

"Q. Well, now, Mr. Gadd, tell the court and jury how long you worried over the matter and to what extent it worried you and troubled you. A. Well, I think I lost twenty-five or thirty pounds studying about it—wake up at night and study about it—say to myself, 'I ain't done nothing. Why do I have to be accused in such a way as this.' Of course we work on a commission; we get out and get our own customers—it is up to us, in other words to look after

the laundry route—is my living, in other words, and my route I guess went down fifty or seventy-five dollars, maybe.

"Mr. Haun: We object to that, because he has not alleged that in his declaration.

"The Court: Is that alleged in your declaration?

"Mr. Fitzhugh: Not as special damages, your Honor; it only goes to show the extent this report circulated in the vicinity where he worked—how he had to come in contact with it.

"The Court: The court will reserve ruling on that question as to whether where the slander alleged is not actionable per se, whether you can prove any special damages that resulted without averring that—I will give you lawyers a chance to argue and present the authorities later.

"Mr. Fitzhugh: I don't think we can, not as special damages. The only purpose for which I was offering to prove it was simply to show that in his laundry route where he made his living, that this report permeated."

This shows the objection to the testimony was made at the proper time; the ground of objection was understood by the court and ruling reserved, yet the trial judge did not withdraw the testimony from the jury nor limit the effect of it although requested so to do by instructions asked for by defendant and refused.

The excerpt from the transcript also shows that counsel for plaintiff during the trial admitted that the language alleged in the declaration was not slanderous per se and that the proof of special damages was not competent for this purpose.

The trial court did not exclude or qualify this testimony, but charged the jury as follows:

"If you find in favor of the plaintiff, it of course, then becomes your duty to fix the amount of his verdict. If he is entitled to recover, he is entitled to recover such a verdict as will fairly and justly compensate him for the wrongs done. In estimating what that amount would be, the jury should take into consideration the embarrassment, if any, the humiliation, if any; the loss of reputation, if any; which was suffered by the plaintiff, and undertake to say what amount would be a reasonable and fair compensation for having had made against him a false charge of having stolen a bundle of laundry."

The error here complained of is that the judge charged the jury the plaintiff could recover for embarrassment, humiliation and loss of reputation, when no one of these elements of damage had been alleged in the declaration.

This is made the basis of assignment number six.

Defendant requested this instruction:

"When words are used which are not in themselves slanderous, or slanderous per se, before the plaintiff can recover any sum whatever as damages he must allege and prove special damages; that is, he must point out to you, both in his declaration and in his proof, the particular items of his loss and damage because of the slander."

This was refused by the court and it is not covered by the charge given. The refusal to give this charge is made the basis of assignment five. The charge requested states a sound proposition of law. Cheatam v. Patterson, 125 Tenn., 437; Bank v. Bowdre, 92 Tenn., 723; Fry v. McCord, 95 Tenn., 685.

Counsel for plaintiff evidently did not consider the language set out in the declaration and attributed to the defendant slanderous per se when the declaration was drawn because an innuendo was added charging the intention. Then, as shown above, during the trial the language was not considered slanderous per se, but aside from all this, the language is not slanderous per se.

To be slanderous per se under the law in Tennessee in slander cases, language on its face and without extrinsic proof of what was meant or how it was understood must be injurious.

And if the injurious character of the words do not appear upon their face when taken in their usual and natural significance, but only in consequence of extraneous circumstances, they are not actionable per se. Railroad v. Delaney, 102 Tenn., 289; Fry v. McCord, 95 Tenn., 684; Beasley v. Hills, 1 Higgins, 285; Watson v. Nicholas, 6 Hump., 174; 36 Corp. Jur., p. 1150, sec. 17; Williams v. Karnes, 4 Hump., 10.

Words which require an innuendo to give them their objectionable character and meaning, and which they do not fairly bear upon their face, are not slanderous per se. Fry v. McCord, supra; Key v. Armstrong, 151 Pac. (Okla.), 572; 17 R. C. L., p. 396, sec. 150, note 3; 36 Corp. Jur., p. 1151, sec. 17, note 97.

There being no allegation of special damage the testimony objected to should have been excluded and the charge requested should have been given.

Counsel for plaintiff attempts to break the force of this conclusion by the contention that a different rule applies where a person is slandered in his business. The application of this rule in a case like Bank v. Bowdre, is plain enough. That is where the effect is to impair the credit or financial standing of a mercantile concern whose life depends on financial credit, but it has no application here. The charge of personal dishonesty—of theft, is the same in effect, as to most, if not as to all persons. It might damage the business of a cook or chauffeur just as well as a laundry driver. Besides the proof shows that drivers of laundry wagons sometimes take

bundles of laundry belonging to other laundries without any felonious intention, or any intention other than that of business rivalry and still again while Gadd swears his route fell off, Harrison the owner of the route, and principal witness for the plaintiff, swears it did not and that Gadd was not injured in his occupation. The assignments bearing on this point are sustained.

The ninth assignment claims error in this part of the charge:

"So you gentlemen are called upon to determine from the evidence you have heard, first, what language was used by Mr. Wilson in his conversation over the telephone with Mr. Harrison. Then, after you have determined substantially what language was used, it is your duty to determine from all the evidence whether it was the intention of Mr. Wilson, by the language used, to charge Mr. Gadd with the theft of that laundry. If you find it was, the defendant is liable. If you find it was not his intention to do that, the defendant is not liable."

"Now, gentlemen of the jury, if the defendant did intend to charge Gadd, by the language he used to Mr. Harrison, with stealing the laundry, the defendant is liable. If it was not his intention to so charge, but merely to request Mr. Harrison to investigate and see if the laundry was at his place, then he is not liable."

The vice in this charge is that the judge did not tell the jury that in order to recover it was necessary for the plaintiff to prove that the defendant had used in substance the language alleged in the declaration. He did not say that it was necessary for the jury, in order to find a verdict for the plaintiff, to find that this proof had been made. The language charged in the declaration was entirely different from that testified to by the defendant and his witnesses but the charge left the jury to find in favor of either contention as to language used if they attached to the language the requisite intention. This may not have been in the mind of the judge but it is in the language of the charge.

It is true it may be argued that the trial judge corrected this fault in the subsequent part of his charge in which he said:

"The plaintiff claims that was his intention. The defendant denies that and says it was not. That question is not one for the judge to determine, but is one for the jury.

"The burden rests upon the plaintiff to show by a preponderance of the evidence that the defendant did undertake by the language used as averred in the declaration to charge him with stealing the laundry. The plaintiff must make out his contention, I say, by the preponderance of the evidence. That means the greater weight of the evidence, and so the jury, in order to determine whether the preponderance or the evidence sustains

the plaintiff's contention or not, must weigh the evidence, else you could not say where the greater weight of it was. If the evidence were so in conflict or so evenly balanced that the jury was not able to determine whether the greater weight of it sustained the plaintiff's contention that he had been charged with stealing the laundry of Mr. Wilson, it would be the duty of the jury to find in favor of the defendant, because the law puts the burden on the plaintiff of showing by the greater weight of the testimony that it was the intention of the defendant to make that charge against him.''

If the judge had told the jury that the burden was upon the plaintiff to prove first that the language alleged in the declaration in substance was used and second that in using said language the defendant intended to charge the plaintiff with the theft of the laundry, this might have corrected the former part of the charge but the trial judge never does make it plain to the jury that they must find from the preponderance of evidence that the language alleged was in substance used, before they could consider the question of intention. This assignment is also sustained. It results, without further consideration of the contentions of parties, that the case must be reversed and remanded for a new trial. Plaintiff will pay the costs of the appeal.

Owen and Senter, JJ., concur.