**Larry Pendleton, Appellant, v. Time, Incorporated, Appellee.**

**Gen. No. 44,802.**

NIEMEYER, J., dissenting.

Opinion filed December 19, 1949. Rehearing denied January 4, 1950. Released for publication January 5, 1950.

MUSGRAVE, EWINS, PRICE & NOTZ, of Chicago, for appellant.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee; HOWARD ELLIS, J. B. MARTINEAU, and GEORGES DAPPLES, all of Chicago, of counsel.

Mr. Justice Feinberg delivered the opinion of the court.

Plaintiff brought his action against defendant for damages. A motion to dismiss the complaint was sustained and the suit dismissed at plaintiff's costs, from which plaintiff appeals.

The sufficiency of the complaint is the only question presented upon this appeal. We deem it necessary to set out the essential averments, wherein facts well pleaded were, for the purpose of the motion to dismiss, admitted to be true.

The complaint alleges:

"1. Larry Pendleton, the plaintiff, is an artist specializing in the painting of portraits.

"2. Defendant, Time Incorporated, is a corporation engaged among other things in the publication of a certain magazine known as 'Life.' Said magazine is published in the City of Chicago, State of Illinois.

"3. In the month of January, 1945, the plaintiff made, executed and completed a portrait of one Harry S. Truman, then Vice President of the United States of America. During the time plaintiff was painting said portrait of said Harry S. Truman said Harry S. Truman sat before plaintiff on several occasions to aid plaintiff in its execution.

"4. The said portrait was the first portrait for which the said Harry S. Truman had sat and at the time of its completion was the first and only portrait of the said Harry S. Truman then made.

"5. The said portrait was presented to Harry S. Truman. The said presentation and unveiling of said portrait took place in the City of Washington, D. C. on or about March 3, 1945, and was attended by many persons prominent in public life. The title to the portrait so made of and presented to the said Harry S. Truman passed to said Harry S. Truman but the plaintiff had and retained all rights to reproduce the same.

190

"6. By reason of the making of said portrait and its presentation to and acceptance by said Harry S. Truman great fame and acclaim as an artist came to and was had and enjoyed by plaintiff.

"7. By reason of the said execution and presentation of said portrait and the publicity attendant on the same plaintiff was consulted concerning the painting of the portraits of other prominent persons, and he negotiated concerning the doing of similar work for, of and concerning such persons.

"8. On or about April 12, 1945, the said Harry S. Truman became the President of the United States of America. Plaintiff then had and was possessed of the honor and distinction of having made and executed the only existing portrait of the President. The reputation of the plaintiff was thereby greatly enhanced, and the right of the plaintiff to reproduce the portrait of the President made and executed by him had a greatly enhanced value. Plaintiff at said time had entered into a contract with others granting to them the right to make and sell a large number of reproductions of said portrait, under which contract the plaintiff was to receive a royalty on each reproduction sold.

"9. At the time of the unveiling and presentation of said portrait and at all times since the defendant knew and has known of said portrait and that the same had been made and executed by the plaintiff.

"10. The defendant, as aforesaid, is the publisher of the magazine 'Life.' In said magazine are published and publicized in pictures and by means of printed words, among other things, contemporary events of general or peculiar interest.

"11. The plaintiff at said time was also endeavoring to sell the right to reproduce said portrait to a magazine of large national circulation. It was proposed that the said portrait and the painting thereof

191

were to be featured in said magazine. It was also proposed that copies of reproductions of said portrait be sold by the publisher of said magazine. Time Incorporated, defendant herein, was one of the publishers to whom was submitted in the month of April 1945 the foregoing proposal concerning the purchasing by it of the said rights for its magazine known as 'Life.' The offer to defendant was not consummated, the plaintiff and defendant having failed to agree upon a price to be paid by defendant for the right to reproduce said portrait and to publish its accompanying article in said magazine 'Life.'

"12. After the said negotiations for the purchase by the said defendant of the right to reproduce said portrait of said Harry S. Truman had ended and with knowledge in the defendant of the completion and execution of said portrait by plaintiff and its existence as aforesaid, the said defendant despite said negotiations and the said knowledge did in the issue of the magazine 'Life' for the 26th day of November, 1945, upon page 59 thereof, publish the reproduction of a portrait of the said Harry S. Truman, President of the United States which was other than that made and executed by plaintiff above referred to and was made and executed by one Jay Wesley Jacobs. As a caption to the printed matter accompanying said portrait were the words 'Truman Painting.' As a sub-caption to said printed matter were the words 'President sits for first portrait and considers result flattering.' The article following said captions was as follows:

"'During all his years in public life Harry Truman never bothered to have his portrait painted. Recently, however, as President, he sat for Artist Jay Wesley Jacobs. The result, Truman's first portrait, is shown here.

"'The oil painting, academic and realistic, is life-size and was done in the Cabinet Room of the

192

White House. On Truman's right is the American flag, on his left the presidential flag. In his buttonhole is a discharge button from the Army after World War I. Truman himself likes the portrait, especially the eyes, but thinks it is too flattering. Mrs. Truman says she is crazy about it because it looks just like him.

" 'The President did not commission the portrait. It is being paid for by an old friend and it was planned to give the finished painting to members of the Senate where Truman has always had a lot of friends and where, now, he needs friends more than ever.'

"13. The statements made by the defendant in the article accompanying the reproduction of the portrait of said Harry S. Truman were false in that the said portrait is not the first portrait made of said Harry S. Truman and the portrait made by plaintiff was the first portrait made of said Harry S. Truman. The falsity of said statements was known to the defendant at the time the said article was published. *The defendant notwithstanding said knowledge of said falsity, knowingly and maliciously published said article and made said statements with intent to injure the plaintiff and to detract from and destroy his reputation as an artist.*

"14. As a direct consequence of the publication of said false statements in said article published November 26, 1945, by the defendant in said magazine 'Life' the defendant lost all benefit and advantage accruing to him by reason of his having made and executed the first portrait of said Harry S. Truman. The plaintiff was further made to appear as stating an untruth in his prior statements of and concerning his having made the first portrait of the said Harry S. Truman. *The rights of reproduction of the portrait of said Harry S. Truman had and possessed by plaintiff and the sale*

193

*ﬅ*

*of which reproduction was to be publicized as a sale of the first portrait made of the said Harry S. Truman was lessened and rendered of little or no value.* The plaintiff by reason of said publication by defendant of said false statements has further lost the commission to do portraits of other prominent persons and has been otherwise greatly damaged in his person and reputation.

"15. The plaintiff as a direct and proximate consequence of the acts of the defendant as above set forth has been damaged in the sum of One Hundred Thousand Dollars ($100,000.00).

"Wherefore plaintiff asks judgment in the sum of One Hundred Thousand Dollars ($100,000.00) and costs of suit." (Italics ours.)

■ It will be observed that the complaint alleges the defendant, notwithstanding the knowledge of the falsity of its published caption, knowingly and maliciously published said article and made such statements "with intent to injure the plaintiff and to detract from and destroy his reputation as an artist." It is specifically further alleged that as a direct consequence of the publication of said false statements in said article, plaintiff lost all benefit and advantage accruing to him by reason of his having made and executed the first portrait of Harry S. Truman; that plaintiff was further made to appear as stating an untruth in his prior statements concerning his having made the first portrait of Harry S. Truman; that his reproduction and sale rights of the portrait made by plaintiff were lost and rendered of little or no value; and that plaintiff lost the commissions to do portraits of other prominent persons and was otherwise greatly damaged.

We find in the allegations of this complaint a definite statement of a property right in the value attained in the painting of the "first" portrait of Harry S. Truman, the loss of potential income from reproduction

194

and sale rights of this portrait, as well as the loss of earnings from commissions to do portraits of other prominent persons. When, as alleged in the complaint, this injury to plaintiff's property right was wilfully, maliciously and intentionally committed by defendant, there must be a remedy afforded for this wrong to the plaintiff.

 We think the applicable principle of law was clearly stated in *Doremus v. Hennessy*, 176 Ill. 608, 615. It was there said:

"Every man has a right, under the law, as between himself and others, to full freedom in disposing of his own labor or capital according to his own will, and any one who invades that right without lawful cause or justification commits a legal wrong, and, if followed by an injury caused in consequence thereof, the one whose right is thus invaded has a legal ground of action for such wrong. Damage inflicted by . . . misrepresentation, . . . with malicious motives, is without excuse, and actionable. . . . An intent to do a wrongful harm and injury is unlawful, and if a wrongful act is done to the detriment of the right of another it is malicious, and an act maliciously done, with the intent and purpose of injuring another, is not lawful competition."

See also *Dunshee v. Standard Oil Co.*, 152 Iowa 618, and *Tuttle v. Buck*, 107 Minn. 145.

The facts and principle announced in *Advance Music Corp. v. American Tobacco Co.*, 51 N. Y. S. (2d) 692, 693, affirmed 296 N. Y. 79, are analogous and peculiarly applicable to the instant case. The reasoning in that case is persuasive. It was there said:

"In short, defendants, not casually or inadvertently, *but deliberately* and as a regular course of business and for their own personal gain, make statements and do acts which are untrue and deceptive and which are disparaging to plaintiff's property, and the nature of

such representations and acts and the circumstances under which they are made and performed are such as to lead defendants to foresee that the conduct of third persons might be determined thereby; and such representations and acts are of such nature as to be likely to cause and, in fact, have caused damage to the plaintiff.'' (Italics ours.)

The instant action is not to be confounded with ordinary libel actions involved in cases cited by defendant in support of its position, where it was uniformly held that unless the words are actionable *per se,* special damage must be alleged. Even if it were necessary to allege special damage in the instant case, we regard the allegations of the instant complaint as sufficiently alleging special damage.

We must hold the trial court erred in sustaining the motion to strike the complaint, and dismissing the action. The judgment of the superior court is reversed and the cause remanded with directions to overrule the motion to strike and to direct an answer to the complaint.

*Reversed and remanded with directions.*

TUOHY, P. J., concurs.

NIEMEYER, J., dissents. Plaintiff's action is based on the charge that defendant knowingly, maliciously and with intent to injure plaintiff and detract from and destroy his reputation as an artist, published in Life magazine a false statement that the portrait painted by Jacobs and reproduced in the magazine was the first portrait of Truman. The parties have narrowed the issues on appeal to two questions. Plaintiff ends his reply brief with the statement, ''The only question before the court here is whether special damages must be alleged in this complaint. We submit that they need not be alleged . . . .'' Defendant, admitting on oral argument the general rule that false words causing special damage are actionable, contends that the

alleged false statement is not actionable because it amounts "merely to 'puffing' of defendant's own goods, not to disparagement of plaintiff's goods," and that an allegation of special damages is essential to a statement of a cause of action.

The publication of falsehoods disparaging the merits, quality, utility or value of another's property is not actionable unless the plaintiff has suffered special damages and pecuniary loss as a direct and natural result of the publication. In Prosser on Torts, chap. 20, sec. 106, under the title "Injurious Falsehood," the author says (p. 1037) the action is broader in its scope than "disparagement of property," "slander of goods," and "trade libel," and (p. 1042) "it resembles the action for defamation but differs from it materially in the greater burden resting on the plaintiff and the necessity for special damages in all cases." The principles governing the action are stated in the Restatement of the Law of Torts, chap. 28, entitled "Disparagement," sec. 624 *et seq.*, where in the introductory note the authors say, "In disparagement, the publisher is not liable unless the disparaging matter has caused financial loss." In 33 Am. Jur., sec. 350, under the sub-title "Slander or Disparagement of Title or Property," it is said, "The rule is generally recognized that special damage is a necessary element of a cause of action for slander of title or disparagement of goods or property, and that the special damages recoverable must be such as proximately flow from the slander uttered." Professor Jeremiah Smith in his much cited article "Disparagement of Property," 13 Columbia Law Review (1913), pp. 13–36, 121–142, says (p. 121), "Plaintiff's burden of proving actual damage is not lightened by any 'presumption' or by any arbitrary rule of law. It must be found as a fact in all cases of disparaging statements, whether oral or written." *Advance Music Corp. v. American*

*Tobacco Co.,* 51 N.Y.S.(2d) 692, cited in the majority opinion, is a decision of the trial court on an amended complaint. The original complaint had been dismissed because, among other reasons, it did not contain any allegation of special damage to plaintiff, the court saying (50 N.Y.S.(2d) 287, 291): "In this state it is a settled principle in the law of defamation that in the absence of a showing of special damage one may not recover for a slander or libel of property." In passing on the amended complaint the court cited, in support of the statement quoted in the majority opinion, Restatement, Torts, sec. 624 *et seq.,* and 13 Columbia Law Review 13, 121, referred to above, and said, ". . . the amended complaint makes it abundantly clear by a wealth of detailed facts that defendants' acts and representations were likely to and actually have caused actual damage to the plaintiff." This case was reversed by the Appellate Division (53 N. Y. S. (2d) 337) but affirmed by the Court of Appeals (296 N. Y. 79). In the latter court "a wealth of detailed facts" relating to damages is set out in a condensed statement of the pleadings. The question of special damages is not discussed by the court. See *Frawley Chemical Corp. v. A. P. Larson Co., Inc.,* 274 App. Div. 643, 86 N.Y.S.(2d) 710, and *National Refining Co. v. Benzo Gas Motor Fuel Co.,* 20 F.(2d) 763.

In pleading special damages plaintiff is governed by the general rules of pleading applicable to the various actions in which such damages must be alleged and proved. In Prosser on Torts (pages 1044 and 1045) the author says:

"Usually, however, the damages claimed have consisted of loss of prospective contracts with the plaintiff's customers. . . . It is nearly always held that it is not enough to show a general decline in his business resulting from the falsehood, even where no other cause for it is apparent, and that it is only the loss

of specific sales that can be recovered. This means, in the usual case, that the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived.''

This strict rule is relaxed when it is not reasonably practicable for plaintiff to ascertain the names. 13 Columbia Law Review pp. 123, 124. The particular circumstances excusing the giving of names must be pleaded, as held in *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, Inc.,* 17 F.(2d) 255, cited by plaintiff. Plaintiff and defendant in that case were engaged in selling livestock remedies. Plaintiff's action was based on a publication by defendant of the formula of one of plaintiff's remedies with disparaging comment. The court held that the language would be actionable only by reason of some special damage occasioned by it and that such special damage must be particularly averred. After reviewing many authorities (including *Ratcliffe v. Evans,* 2 Q. B. 524, an action based on malicious falsehood), the court said (p. 261):

''It was therefore necessary for the plaintiff to allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If the plaintiff desired to predicate its right to recover damages upon general loss of custom, it should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing that plaintiff could not allege the names of particular customers who withdrew or withheld their custom.''

199

And (p. 262):

"In the case at bar, the allegations of damages were clearly insufficient to admit proof and sustain a recovery for the loss of particular customers. The complaint did not allege the name of any particular person who withdrew or withheld his custom. They were likewise insufficient to admit proof and sustain a recovery for a general loss of business. The complaint did not allege a state of facts showing that it was impossible for plaintiff to allege and prove the loss of particular customers, it did not allege facts showing a general loss of business, and it did not allege facts showing that such diminution of profits was the direct and natural result of the publication. We therefore conclude that there was no sufficient allegation of special damages."

In an action different in character but where the allegation of special injury was essential to a recovery, our Supreme Court in *Barrows v. City of Sycamore,* 150 Ill. 588, 596, held that facts must be alleged to support a claim for special damage. Plaintiff brought suit for damage occasioned by the erection of a stand-pipe or water tower at a street intersection near her property, used for a hotel and residence. A demurrer to her declaration was sustained. On appeal, after holding that the allegations showed that the city wrongfully placed the structure in its streets and that the gist of plaintiff's action was a special injury, which must be alleged and proved, the court said:

"Under this rule it is too clear for argument that neither of the first three counts of the declaration shows a right of action in the plaintiff. The special injury attempted to be set up in each of these counts is, that her property has been depreciated in value because of the danger of the building being destroyed or damaged by the stand-pipe falling or being blown

upon it, or by bursting and flooding it with water, but not a single fact is alleged upon which the apprehension of such danger can be based. . . . True, as in the instances referred to by counsel for appellee, water towers and stand-pipes have fallen or been destroyed; but the same is true of buildings of every kind,— perhaps of all superstructures. If this one is liable to fall, blow down or burst, that liability must arise from certain facts, and those facts must be pleaded. Here we have nothing but the mere conclusion of the pleader.''

In this case plaintiff divides his loss or damage into four classes. (1) Loss of benefit and advantage accruing to plaintiff by reason of his having made and executed the first portrait of Harry S. Truman. There is no allegation of fact from which any inference of economic benefit or advantage accruing from having painted the first portrait may be drawn. The monopoly arising from making the first portrait ended with the painting of the portrait by Jacobs. Therefore we must assume, in the absence of allegation of fact showing the contrary, that the value of plaintiff's portrait depended on its intrinsic merits and not on the priority of its execution. (2) Plaintiff was made to appear as stating an untruth in his prior statements concerning his having made the first portrait of Truman. This alleged damage belongs in an action for personal defamation rather than in an action for disparagement of property. However, it need merely be said that there is nothing in the complaint showing that at any time prior to the institution of suit plaintiff made any statement or claim that he had painted the first portrait of Truman. It is not even alleged that in the publicity of the presentation to Truman the portrait was referred to as his first portrait. (3) The rights of reproduction of the portrait and the sale of such reproduction, which was to be publicized as a sale of

the first portrait of Truman, was lessened and rendered of little or no value. Again, there is no allegation of fact showing financial loss because of the alleged reduction in value of these rights. There is no allegation that any contract had been entered into for the publication of plaintiff's portrait as the first portrait of Truman, or how and in what manner the proposed publicizing was to be done, or of steps taken or expenses incurred in furtherance of that object. Plaintiff does allege that at the time of Truman's accession to the presidency he had entered into a contract with unnamed persons granting them the right to sell a large number of the portraits, under which contract plaintiff was to receive a royalty on each portrait sold. So far as this complaint shows, this contract may have been fully performed. As heretofore stated, plaintiff is not aided by any presumption in respect to special damages. (4) Loss of commissions to do portraits of other prominent persons. Clearly this allegation is insufficient unless the names of persons whose portraits were to be painted and the financial loss to be sustained by the failure to get such commissions are stated.

The court did not err in dismissing the complaint for failure to allege special damages. It is unnecessary to discuss the second question involved on appeal, defendant's claim that the false statement complained of amounts merely to "puffing" of defendant's own goods, not to disparagement of plaintiff's goods.

The judgment should be affirmed.