**ELECTRIC FURNACE CORPORATION, Cross-Plaintiff-Appellee,**

v.

**DEERING MILLIKEN RESEARCH CORPORATION, Cross-Defendant-Appellant.**

**No. 15193.**

United States Court of Appeals Sixth Circuit.

Dec. 21, 1963.

B. P. Gambrell, Atlanta, Ga., and Ray H. Moseley, Chattanooga, Tenn., Noone, Moseley & Noone, Chattanooga, Tenn., of counsel, for cross-defendant-appellant.

Jac Chambliss, Chattanooga, Tenn., Chambliss, Chambliss & Hodge, Chattanooga, Tenn., on brief of counsel, for cross-plaintiff-appellee.

Before O'SULLIVAN, Acting Chief Judge, and MILLER and CECIL, Circuit Judges.

CECIL, Circuit Judge.

This action was begun in the United States District Court for the Eastern District of Tennessee by Deering Milliken Research Corporation against Electric Furnace Corporation, as a suit for infringement of a patent. While this action was pending, Electric Furnace Corporation filed a cross-claim against Deering Milliken Research Corporation on a charge of libel. Subsequently, the patent infringement action was disposed of and the case proceeded to trial on the cross-claim for libel. The patent infringement action is not here involved, except as it furnishes background for the circumstances out of which the claim for libel arises. The case was tried to a jury and resulted in a verdict for Electric Furnace Corporation in the amount of $6420 compensatory damages and $12500 punitive damages. This appeal followed. The questions presented on the appeal involve the sufficiency of the evidence to support the verdict. The parties will be referred to as Electric Furnace or plaintiff and Deering Milliken or defendant.

Early in 1950, Electric Furnace began the business of coating certain articles used in textile manufacturing with a plastic substance known as Teflon. On or about June 7, 1954, Deering Milliken notified Electric Furnace that it held a patent on this Teflon coating process which entitled Deering Milliken to royalty payments from all persons using the process.

Thereafter, on July 31, 1954, Electric Furnace wrote a letter soliciting the business of the textile trade for Teflon coating at a quoted price. In this letter, Electric Furnace stated that Deering Milliken was claiming a patent on the Teflon coating process together with the right to collect royalties from all businesses using the process. It further stated in this letter that it did not dis-

close the identity of its customers and that Electric Furnace would defend, at its own expense, any royalty suits brought by Deering Milliken against customers of Electric Furnace. This letter was signed by Mr. Stanley Livingstone, president of Electric Furnace.

The patent infringement suit was filed in December 1955. During the pendency of this action, in April 1955, Deering Milliken took a discovery deposition of Mr. Livingstone. As a part of his testimony, upon request and on advice of his counsel that it was required, Mr. Livingstone furnished a list of the customers of Electric Furnace. On September 6, 1956, Deering Milliken wrote and mailed to these customers the letter which is the subject of this libel action. The libelous portion of the letter, as claimed by the plaintiff, is the first paragraph which reads as follows: "We have learned from Mr. Stanley Livingstone, President of Electric Furnace Corporation, Chattanooga, Tennessee, that you have used the services of Electric Furnace Corporation in obtaining filling grates coated with Teflon for use in your mill, and Mr. Livingstone knows that we are writing directly to you." The letter otherwise notified the customers that Deering Milliken owned a patent on the process, that they would have to pay a royalty of twenty cents per grate for all those already acquired and that in the future they should obtain Teflon coating only from licensees of Deering Milliken.

The plaintiff contends that Mr. Livingstone's letter to the customers soliciting their business was in effect a promise not to disclose their identity and that the objectionable paragraph of the Deering Milliken letter indicated that he had violated that promise by voluntarily reveal-

ing the names of customers to Deering Milliken. It is further contended by the plaintiff that the defendant knew of the representation of Electric Furnace that it would not disclose the names of its customers; that it would hold them in confidence; and, that Deering Milliken sought to destroy this confidence and the good will between Electric Furnace and its customers by implying that Electric Furnace had voluntarily broken its promise. The plaintiff claims that the action of the defendant was knowingly and maliciously done, that it was defamatory and that as a result it was entitled to damages both compensatory and punitive.

Deering Milliken made claims in defense of writing the letter as follows: 1. The letter was not libelous and Electric Furnace was not defamed thereby; 2. The letter was written and mailed in legitimate protection of its interests under its patent; (Section 287, Title 35 U. S.C.) [1] 3. The letter did not imply that the identity of the customers had been disclosed voluntarily and, therefore, the statement in the letter was true, and 4. Electric Furnace was not damaged. Upon these issues the trial judge submitted the case to the jury.

The paragraph of the letter which is the subject of this action is obviously not libelous per se. Whether it is libelous per quod depends on the surrounding circumstances. Words which are harmless in themselves may be libelous or defamatory in the light of surrounding circumstances.

The evidence discloses that for months prior to and for months subsequent to the filing of the infringement action, Dr. Armitage of Deering Milliken and Mr. Livingstone of Electric Furnace had conducted negotiations for a settle-

1. "Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

ment of the dispute arising out of Deering Milliken's claimed patent rights. Mr. Livingstone claimed that he could "break" the patent. He was, however, willing to work with Dr. Armitage for the mutual benefit of both companies. Deering Milliken's patent was issued in March 1954 and in December of that year it sent out a letter, with a copy of the patent enclosed, to all of the weaving mills, saying that if they had Electric Furnace coat their filling grates they were liable to Deering Milliken for infringement. As a probable result of this, the number of plaintiff's customers dropped the following year from 49 to 25. The plaintiff concedes that the defendant had a right to write and mail this letter.

Mr. Livingstone met Dr. Armitage by appointment at Pendleton, South Carolina, on August 31, 1956, for further negotiations of settlement. In the progress of these negotiations, Dr. Armitage showed Mr. Livingstone a copy of the letter which he proposed to send to the plaintiff's customers as named by Mr. Livingstone in the deposition. Mr. Livingstone objected very strenuously to the first paragraph of the letter. He said that he had told his customers that he would not divulge their names and that he had built up good will with them which Dr. Armitage sought to destroy by the letter. Mr. Livingstone objected to the use of his name and to the statement that he knew the letter was being sent out. Dr. Armitage said the letter would be more effective and authoritative with the use of the name. The discussion ended without any statement on the part of Dr. Armitage that he would or would not send the letter. Mr. Livingstone understood that it would not be mailed. It was thereafter mailed on and around September 6th. Electric Furnace received responses from a number of its customers in which the customers referred to the statement of Mr. Livingstone that he would not reveal the names of customers. These are some of the circumstances surrounding the writing and mailing of the objectionable letter.

It would seem that Deering Milliken's letter of December 1954 was sufficient compliance with the statute (Section 287, Title 35 U.S.C.) to put the customers of Electric Furnace on notice that they might become liable as infringers. Therefore, it is questionable whether there was need for the letter of September 6th. Furthermore, there was no need to use Mr. Livingstone's name in order to give notice in compliance with the statute. The use of his name, coupled with the statement that he knew the letter was being sent, which was apparently untrue, was open to the inference that he acquiesced in the demand of the letter and that he had abandoned his position of protecting the customers against suits for royalties and infringement.

The trial judge defined libel substantially as follows: Libel in law is a false and malicious publication expressed in writing or printing tending to blacken the reputation of another or to expose him to public hatred, contempt or ridicule. In more simple and modern terms, a libel is a false written or printed statement that tends to degrade or defame another in the eyes of the public, or that part of the public with which he deals. Stated in another way, a libel is a false and malicious defamation of another expressed in print or in writing, as distinguished from an oral statement, tending to injure the reputation of the other, and to expose him to public hatred, contempt or ridicule.

He instructed the jury that malice was an essential element of the case and that it might be either actual or legal malice. He defined actual malice as meaning ill will, animosity or an intent to injure. Legal malice, he stated, arises from making a defamatory statement without sufficient cause or excuse or for the purpose of accomplishing an improper end.

The trial judge further explained to the jury the distinction between libel per se and libel per quod and that in this case it could only be libel per quod. He said: "Where the defamatory nature of the writing does not appear upon the face

of the writing, but rather appears only when all of the surrounding circumstances are known, it is said to be libel per quod as distinguished from libel per se, and in such cases damages are not presumed but must be proven before the plaintiff can recover." These instructions constitute a correct exposition of the law of libel as applicable to the facts of this case. Hinson v. Pollock, 159 Tenn. 1, 15 S.W.2d 737; Venn v. Tennessean Newspapers, Inc., 201 F.Supp. 47, M.D. Tenn., aff'd 313 F.2d 639, C.A. 6, cert. den., 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053; Dupont Engineering Co. v. Nashville Banner Pub. Co., 13 F.2d 186, M.D., Tenn.; Fry v. McCord Bros., 95 Tenn. 678, 33 S.W. 568; Bank v. Bowdre Bros., 92 Tenn. 723, 23 S.W. 131; Smith v. Fielden, 205 Tenn. 313, 326 S.W. 2d 476; Riley v. Dun & Bradstreet, 172 F.2d 303, C.A. 6; Sweeney v. Newspaper Printing Corp., 177 Tenn. 196, 147 S.W. 2d 406; Massee v. Williams, 207 F. 222, C.A. 6; Williams v. Karnes, 23 Tenn. 9; Black v. Nashville Banner Pub. Co., 24 Tenn.App. 137, 141 S.W.2d 908; 53 C.J.S. Libel and Slander § 1, et seq.; 33 Am.Jur. Libel and Slander, Sec. 3, et seq.

■ For libel of a corporation, the judge charged the jury: "For an alleged defamation of a corporation to be actionable, the alleged written statement complained of must be false and must reflect in a defamatory manner upon the conduct, management, or financial condition of the corporation. There cannot be a recovery in this case unless the alleged language complained of or the necessary implications therefrom were false and unless it also reflects in a defamatory manner upon the conduct, management, and/or financial condition of the corporation." This explanation of the law of libel of corporations is supported by the authorities. Dupont Engineering Co. v. Nashville Banner Pub. Co., 13 F.2d 186, 189, M.D.Tenn.; Memphis Telephone Co. v. Cumberland Telephone & Telegraph Co., 145 F. 904, C.A. 6; Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, 17 F.2d 255, 52 A.L.R. 1187, C.A. 8.

■ We conclude that the evidence of the circumstances surrounding the writing of the letter in question, including the element of malice, actual or legal, was sufficient to require submission to the jury on the issue of libel. But libel per quod standing alone without proof of actual damages, proximately caused by the libel, will not support a verdict for the plaintiff. We turn now to the evidence on the subject of actual damages. Actual damages were pleaded by the plaintiff in its complaint.

■ The plaintiff attempted to establish damages through loss of business as a result of the alleged libelous letter. This business consisted of two items, Teflon coating of filling grates and Teflon coating of sliver guides. Mr. Livingstone testified that in 1955 his company coated 10239 filling grates. In 1956 the company did 7380, 1100 of which were done in the last four months of the year. In 1957, excluding mills which did not get the letter, Electric Furnace did 4109 grates. By Mr. Livingstone's testimony the profit on these grates was fifteen cents each. If we could assume that this drop off of business in coating filling grates in 1957 over 1955 was due to the alleged libelous feature of the letter, the loss of profit would amount to about $920. Mr. Livingstone testified on cross-examination that the filling grate business was declining at this time because the "center fork" was taking its place.

On the sliver guide business, Mr. Livingstone testified that his company started with $6300 in 1954 and did a dollar volume on this item in 1955 of $36000. In 1956 this volume was $28000, with no breakdown as to how much of it was done before September, the month the letter was mailed.

Mr. Harry G. Carpenter, auditor for Electric Furnance, testified that the company did sliver guide business with 42 mills prior to October 1956, and averaged $2500 per month gross receipts.

From October 1956, through December 1957, it averaged $165 per month, with eight mills on sliver guide business.

The fallacy in this method of proof is that it mistakes loss of gross receipts for loss of profits, which is the actual damage. Furthermore, there is no mention in the letter of sliver guides. But there is a more serious fallacy. The letter has two facets, one the alleged libelous phase, using Mr. Livingstone's name, and the other, the legitimate or privileged phase, of notifying potential infringers of patent claims in accordance with the statute. (Section 287, Title 35 U.S.C.) The trial judge recognized this distinction in his instructions to the jury. He submitted to the jury a question of fact whether the defendant exceeded its statutory privilege in writing the letter and using Mr. Livingstone's name. While Mr. Livingstone had some responses from customers concerning his letter of July 31, 1954, not one customer said that it had discontinued business with the plaintiff because of any breach of promise by Mr. Livingstone or any misrepresentation made by him on behalf of the Electric Furnace Corporation. No business likes to court a lawsuit. One customer said it would discontinue further business until the patent claims were settled. Another asked if Electric Furnace would pay the claimed royalty. It did not want to be sued for $36.80. The evidence fails to show that any business was lost due to any libelous phase of the letter of September 1956. The customers themselves could have cleared up this missing link in the proof.

Another element of damages claimed by plaintiff is an item of approximately $800 for travelling expenses of Mr. Livingstone during October, November and December of 1956. Mr. Livingstone was the sole sales representative of his company and it was necessary for him to travel to solicit business. There is no breakdown of these expenses to show what part of them, if any, were not routine travelling expenses.

We conclude that there is a failure to offer any evidence to prove that Electric Furnace suffered any damages as a proximate result of the alleged libelous letter. Since punitive damages, even though actual malice may exist, cannot be allowed in an action for libel per quod, unless there is proof of actual damages, there is no support for the verdict of the jury. Fry v. McCord Bros., 95 Tenn. 678, 33 S.W. 568; Price v. Clapp, 119 Tenn. 425, 105 S.W. 864; Saunders v. Baxter, 53 Tenn. 369; Langford v. Vanderbilt Univ., 199 Tenn. 389, 287 S.W.2d 32; Louisville, N. & G. S. Railroad v. Guinan, 79 Tenn. 98.

An appellate court may vacate, set aside or reverse a judgment of a District Court "and may remand the cause and * * * require such further proceedings to be had as may be just under the circumstances." (Section 2106, Title 28 U.S.C.) Under the circumstances disclosed by the record before us, we deem it appropriate and just, in this case to reverse the judgment of the District Court and grant a new trial. It is so ordered.