ELECTRIC FURNACE CORPORATION,
Plaintiff-Appellee and Plaintiff,
Cross-Appellant,

v.

DEERING MILLIKEN RESEARCH COR-
PORATION, Defendant-Appellant and
Defendant, Cross-Appellee.

Nos. 17100, 17101.

United States Court of Appeals
Sixth Circuit.

Oct. 4, 1967.

Ray H. Moseley, Chattanooga, Tenn.,
for Deering Milliken Research, B. P.
Gambrell, Atlanta, Ga., on brief.

Sizer Chambliss, Jac Chambliss, Chat-
tanooga, Tenn., for Electric Furnace,
Chambliss, Chambliss & Hodge, Chatta-
nooga, Tenn., of counsel.

Before O'SULLIVAN, CELEBREZZE
and PECK, Circuit Judges.

O'SULLIVAN, Circuit Judge.

We consider here the appeal of Deering
Milliken Research Corporation (Deer-
ing) defendant in a libel action, from a
judgment for plaintiff, Electric Furnace

Corporation (Electric), awarding plaintiff-appellee $834.36 compensatory and $50,000 punitive damages. Judgment was entered after the District Court reduced, as excessive, a jury's verdict, returned July 30, 1965, for $2,000 compensatory and $60,000 punitive damages.

This judgment was the product of the third trial of this lawsuit. The outcome of the first trial in which a jury awarded $6,420 compensatory and $12,500 punitive damages to Electric, was reversed by this Court in Electric Furnace Corp. v. Deering Milliken Research Corp., 325 F.2d 761 (CA 6, 1963). We there remanded the case for a new trial, and following a second trial a jury again found in favor of the plaintiff, awarding it $20,000 compensatory and $50,000 punitive damages. Upon Deering's motion, the District Judge thereupon ordered a new trial, unless plaintiff would accept a reduction of the compensatory damages to $839.36 and the punitive damages to $25,000. Plaintiff elected not to accept the ordered remittitur, and the third trial ensued.

Defendant-appellant's motions for a directed verdict at the close of plaintiff's case in this last trial and at the close of proofs, and its motion for judgment n. o. v., were overruled. But upon its motion for new trial the District Judge ordered the above mentioned reduction of the jury's awards of compensatory and punitive damages, and this time the plaintiff accepted the suggested remittitur; judgment was entered on December 27, 1965. It is this final judgment which is now before us on appeal.

In our earlier opinion, 325 F.2d 761–766, we held that a letter written on September 6, 1955, by Deering Milliken to a list of Electric Furnace's customers was not libelous per se, but could be found to be libelous per quod; but we observed that "libel per quod standing alone without proof of actual damages proximately caused by the libel, will not support a verdict for the plaintiff." 325 F.2d at 765. Judge Cecil, author of our opinion, went on to review plaintiff's evidence on damages, and concluded,

"We conclude that there is a failure to offer any evidence to prove that Electric Furnace suffered any damages as a proximate result of the alleged libelous letter. Since punitive damages, even though actual malice may exist, cannot be allowed in an action for libel per quod, unless there is proof of actual damages, there is no support for the verdict of the jury." 325 F.2d at 766.

Notwithstanding plaintiff's failure then to sustain its burden of proof of actual damages, we elected, pursuant to 28 U.S.C. § 2106, not to direct entry of a judgment for defendant, but remanded the case for a new trial. Plaintiff, was, therefore, given opportunity at a new trial to offer such proof. Our review of the third trial persuades us that plaintiff did not offer such proof. We now reverse and remand for entry of judgment for defendant.

Our former opinion, 325 F.2d 761, sets out at adequate length the background of this litigation, the evidence then offered by plaintiff on its attempt to prevail, and the law which governs. We repeat here only to the extent necessary to expose our current view. The litigation began as a suit by Deering in 1955, charging Electric with patent infringement. While the case was pending, Deering obtained, by its production at the taking of a deposition of Electric's president, Stanley Livingstone, a list of concerns for whom Electric was doing work— employing a chemical process—which allegedly infringed Deering's patent. Thereafter, in late August of 1956, Livingstone and the president of Deering, Dr. Armitage, met to discuss the pending patent case. At this meeting Dr. Armitage showed Mr. Livingstone a copy of a letter which Deering proposed to mail to Electric's customers. The general purport of the letter was to notify these customers that Electric was infringing Deering's patent in the process it was using in serving them. The first paragraph of the letter said:

"We have learned from Mr. Stanley Livingstone, President of Electric Fur-

nace Corporation, Chattanooga, Tennessee, that you have used the services of Electric Furnace Corporation in obtaining filling grates coated with TEFLON for use in your mill, and Mr. Livingstone knows that we are writing directly to you."

Livingstone objected to Armitage's plan to send this letter, calling attention to a letter which had been written by Livingstone some two years earlier, on July 31, 1954, wherein Electric advised its customers, anent Deering's claims concerning the alleged infringement of its patent, that Electric would defend at its cost any suit for infringement or royalties brought against its customers; the letter further stated that "we do not disclose the identity of our customers." Livingstone said that the above language was tantamount to a promise by his company not to give out the names of its customers; and that Armitage's proposed letter could be construed as telling Electric's customers that it had voluntarily given their names to Deering in breach of its 1954 promise. There is no evidence that Armitage agreed or led Livingstone to believe that the letter would not be sent, and such a letter was sent on or about September 6, 1956, to each of Electric's customers.

This present litigation then began by Electric's filing of a cross-complaint in the patent case, charging that Deering had libelled it by sending out the September 6, 1956, letter. Electric's charge of libel resides in its claim that the accused letter implied that Electric had broken a promise with its customers and thus defamed and degraded it in their eyes, and in the industry where it was known.

In our former opinion, we went along to the extent of holding that a jury could find that the letter was libelous *per quod*, but that "libel per quod standing alone without proof of actual damages, proximately caused by the libel, will not support a verdict for the plaintiff." We recited the authorities which supported our view of the law and we need not here restate Judge Cecil's lucid exposition of the law and his extensive citation of the

authorities supporting our conclusion. What he there said is now the law of this case, but independently of such rule, we are satisfied that a fresh examination of applicable authorities would not lead us now to any different conclusions. The evidence offered and admitted at the third trial gave no more support to plaintiff's case than that which made up the record at the first trial. Plaintiff-appellee's current address to us does not contend otherwise.

The fatal deficiency in plaintiff's case resides in its failure to show that any recipient of the accused letter gave it the meaning which Electric asserts is fairly inferable from a reading of it. There was no evidence from any of such recipients which indicated that Electric was in fact defamed or degraded by the letter, and especially, there was no evidence that Electric suffered any actual or special damages by way of loss of business which could be attributed to the allegedly libelous letter. In our first opinion we said,

"While Mr. Livingstone had some responses from customers concerning his letter of July 31, 1954, not one customer said that it had discontinued business with the plaintiff because of any breach of promise by Mr. Livingstone or any misrepresentation made by him on behalf of the Electric Furnace Corporation.

\*　　\*　　\*　　\*　　\*　　\*

"The evidence fails to show that any business was lost due to any libelous phase of the letter of September 1956. *The customers themselves could have cleared up this missing link in the proof.*" (Emphasis supplied.) 325 F. 2d at 766.

Our suggestion of a method of providing the "missing link" in the proofs was not followed: no relevant testimony by any customer was provided at the third trial. Throughout the trial plaintiff's counsel, by various observations, hinted that his inability to prove actual and special damages was a reluctance of Electric's customers to come forth with the

necessary testimony, a reluctance produced by their unwillingness to oppose the presumably powerful defendant. There is nothing in the record, however, to support such a theory. It was also intimated that such customers and their executives were beyond the reach of the trial court's subpoena, but even if that were so, no effort was made to obtain the needed evidence by depositions or otherwise. As indicated in our first opinion, there was evidence that Electric's business was experiencing some dropping off and that the accused letter intervened in the period of this decline, but a mere showing of such decline is not enough where the accused statements cannot be regarded as libelous per se. That the plaintiff made no better case of actual damages than on the first trial is demonstrated by the fact that the District Judge at the conclusion of both the second and third trials reduced the award of compensatory damages to the amount of expense plaintiff claimed it incurred in an effort to regain its customer's goodwill following the sending of the allegedly libelous letter.

We turn then to the central issue: whether the compensatory damages which the District Court allowed as recoverable under the proofs in the sum of $834.36, and which were accepted as justifying the jury's award of punitive damages in the sum of $60,000, reduced as excessive to the figure of $50,000, can be regarded as "special damages" caused by Deering's letter, that will support the judgment below. The figure of $834.36 was made up mainly of travel expenses in the amount of $814.36; Mr. Livingstone testified he incurred these expenses in visiting Electric's customers to reestablish his and his company's standing, following the sending of the allegedly libelous letter. The $20.00 balance was the cost to Electric in preparing and mailing certain mimeographed letters to Electric's customers. These were apparently copies of a letter which Livingstone had sent to Deering under date of September 12, 1956, protesting the sending out by Deering of the September 5 letter; in

this letter Livingstone declared that he had not voluntarily given Deering the list of customers and averred that "the reaction of the mills to your [September 5] letter establishes the fact that the false implication has damaged this status [Electric's good will] materially." The letter demanded that Deering retract its letter and threatened suit if that was not done. Deering sent no retracting letter.

We deal first with whether Electric's proofs of travel expense overcame the vice which we found in our first opinion. We there held that such expenses did not qualify as proof of special damages, saying that "[t]here is no breakdown of these expenses to show what part of them, if any, were not routine travelling expenses." 325 F.2d at 766.

The evidence showed that it was a usual practice for Mr. Livingstone to visit Electric's customers in the last quarter in each year. In 1955, for example, he had incurred $900 to $1,000 worth of travel expenses in making the customary fall trip, although he claimed that was on "boiler business." As to the 1956 trip, Mr. Livingstone testified, "Well, during the following three months I undertook to call on the more important of our customers, and I traveled, in part, these were exclusively traveling expenses to try and salvage my former position with these customers." On cross-examination, however, he testified that on this trip he discussed with his customers other business than that involved in the patent dispute "to a very limited extent"; and to a further question, he conceded that it was very likely that he discussed other business to some extent, concluding that "it was so long ago I can't state accurately * * * I can't recall at this late date what the discussion was at each trip." He further admitted that it was not anything new for him to travel on business for his company in the months of September, October and November. There was no testimony that, but for Deering's libelous letter, Livingstone would not have taken his usual fall trip to visit Electric's customers—a trip which involved substantially the same costs he incurred

the preceding year. We cannot escape the conclusion that the third trial proofs of Livingstone's travel expenses did not, any better than those proofs presented at the first trial, identify these expenses as being the consequence of the libelous letter.

We believe, however, that there is a more important reason for holding that these expenses did not make out the actual or special damages necessary to make actionable that which is only libelous per quod. There was no evidence that Electric's standing with any of its customers was injured by the Deering letter. There was a total lack of proof that Electric lost any business *because* of that letter. In our first opinion we cited the case of Fry v. McCord Bros., 95 Tenn. 678, 33 S.W. 568 (1895) as authority for the proposition that such proof was necessary to support a verdict in an action for libel per quod. The court there expressed the relevant aspects of Tennessee law which govern this case; quoting in part from various authorities, it said:

" '[t]he plaintiff must show that his character has suffered from defendant's false assertions, and he can only show this by giving evidence of some special damage.'

\* \* \* \* \* \*

"As to pleadings, it is held: 'When a publication is not libelous per se, special damages must be alleged and proven in order to sustain the action.'

\* \* \* \* \* \*

" 'If the plaintiff cannot give the names of those who have ceased to deal with him, *and cannot prove that their ceasing to deal with him is due to defendant's words,* he must fail in the suit, although there has been a falling off in his business.'

\* \* \* \* \* \*

"They cannot lawfully compensate the plaintiff for pain, mental anxiety, or general loss of reputation, in cases where the words are not actionable themselves, but must confine the assessment to the actual pecuniary loss strictly as alleged and proved.' " 95

Tenn. at 688, 689, 33 S.W. at 571. (Emphasis supplied.)

■ It is of course familiar law that a plaintiff can recoup expenses incurred in an effort to minimize damages flowing from a tort. But here the *sine qua non* of a libel per quod action—proof of actual and special damages as the result of an alleged libel—is missing. There is, in effect, no tort demonstrated. We do not think, consequently, that Electric could create a cause of action or provide a basis for an award of damages by having Mr. Livingstone take a trip which included in its purposes the overcoming of damages which were not shown to have been inflicted; the expenses incurred thereby are not recoverable.

A clear statement of the rule we apply is contained in Bigelow v. Brumley, 138 Ohio St. 574, 37 N.E.2d 584 (1941). There a plaintiff attempted to establish the needed proof of special damages in an action for libel per quod by proving expenses incurred in attempting to refute the statement. The Ohio Court said:

"We are satisfied that this item of special damage is not sufficient to make the statement defamatory *per quod* if not otherwise actionable. Plaintiff's allegations do not show any loss or injury actually suffered as a direct consequence of an impaired reputation. They at most show that plaintiff was apprehensive lest, as a result of the statement concerning him, some third persons might alter their relations with him to his disadvantage, and not that any third persons in fact did. As stated in 3 Restatement of Torts, 185, Section 575, comment b, special damage 'must result from conduct of a person other than the defamer or the one defamed \* \* \*.' Here the only special harm alleged is entirely the result of the plaintiff's own conduct in causing money to be expended to deny and refute the statement. The plaintiff in a libel action has the right to try to mitigate damages, and, if his cause of action can be independently established, may recover for sums reasonably expended in this effort. But he may not

pull himself up by his own boot straps, and by such expenditures create a cause of action for himself where one did not otherwise exist. Den Norske Ameriekalinje Actiesselskabet v. Sun Printing & Publishing Assn., 226 N.Y. 1, 122 N.E. 463." 138 Ohio St. at 594, 37 N.E.2d at 594.

In Pollard v. Lyon, 91 U.S. 225, 23 L. Ed. 308 (1876), where the alleged slanderous words were not actionable per se, the Supreme Court observed:

"In such a case, it is necessary that the declaration should set forth precisely in what way the special damage resulted from the speaking of the words. It is not sufficient to allege generally that the plaintiff has suffered special damages, or that the party has been put to great costs and expenses. Cook v. Cook, 100 Mass. 194." 23 L.Ed. at 314

Approval of this rule is found in the text of Prosser, Torts Defamation, § 93, pp. 593–4 (2nd Ed. 1955), and 53 C.J.S. Libel and Slander § 240, p. 364 (1948).

Defendant-appellant raises other questions which we need not consider in view of our disposition of the case.

The plaintiff-appellee filed a cross-appeal asserting that the District Judge erred in granting a new trial after the second trial. The jury had rendered a verdict made up of $20,000 compensatory and $50,000 punitive damages. The District Judge, as a condition of denial of defendant's motion for a new trial, ordered a remittitur of all but $839.36 of the compensatory and $25,000 of the punitive. Plaintiff declined to accept the remittitur and the third trial ensued. It is not necessary to consider the procedural propriety of plaintiff's cross-appeal. The record supporting the cross-appeal does not indicate that the second trial presented any different case than the third trial upon which we hold that a judgment should have been directed for defendant. We likewise consider that the District Judge's holding that the jury verdict, at the second trial, was excessive was within his discretion, and that such discretion was not abused.

The judgment is reversed and the cause remanded for entry of judgment for defendant on the merits, notwithstanding the verdict of the jury.