**CONTINENTAL NUT COMPANY,**
Plaintiff-Appellant,

v.

**ROBERT L. BERNER COMPANY,**
Defendant-Appellee.

**No. 16268.**

United States Court of Appeals
Seventh Circuit.

April 10, 1968.

Rehearing Denied May 17, 1968.

Robert A. Sprecher, James C. Leaton, Joseph M. Taussig, Chicago, Ill., for plaintiff-appellant.

Robert F. Hanley, A. Daniel Feldman, Robert L. Berner, Jr., Donald J. McLachlan, Isham, Lincoln & Beale, Robert L. Berner, Jr., Chicago, Ill., for defend-

ant-appellee; Baker & McKenzie, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

In Continental Nut Company v. Robert L. Berner Company, 7 Cir., 345 F.2d 395, this Court held that the plaintiff's (Continental's) complaint against Robert L. Berner Company and certain other defendants stated a cause of action in libel. We there held that the statements in the alleged publication, though not of a character which would constitute a libel *per se*, are of the type which may constitute a libel *per quod*, and that Continental sufficiently alleged special damages so that its complaint was not vulnerable on that score. We reversed the District Court's dismissal of the complaint as to Robert L. Berner Company and certain of the other named defendants. The case was subsequently tried to a jury which returned a verdict for the plaintiff and against the defendant, Robert L. Berner Company in the sum of $212,000 actual damages and $212,000 punitive damages. Rulings on post-trial motions culminated in the court's granting the defendant Berner Company's motion for judgment n. o. v.[1] and entering judgment for the defendant. Plaintiff Continental appealed.

The main contested issue presented by plaintiff's appeal is whether the plaintiff made such proof of special damages as is required under Illinois law to sustain a verdict for actual damages and punitive damages in a libel *per quod* action.

In our opinion in the previous appeal (345 F.2d 395, 397) we declined to follow the rigid rule of Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Laboratories, Inc., 8 Cir., 17 F.2d 255, that generally a complaint seeking special damages in a libel *per quod* case should specifically allege by name the customers claimed to have been lost. We observed that *Erick Bowman* antedated the liberalized pleading requirements of the Federal Rules of Civil Procedure. We found that the plaintiff's allegations of the specific figures of its gross sales before and after the publication coupled with the averment that the decrease was the natural and proximate result of the letter involved were sufficient from the pleading standpoint to state a claim in libel *per quod*. But we were not there concerned with the nature or quantum of the proof requisite to recovery upon such a claim. We recognized only that "notice" pleading dispensed with any requirement that the complaint set forth with particularity the name of each customer allegedly lost.

The record discloses that plaintiff is a California corporation which buys various kinds of nuts, processes them, and then resells them. It sells both shelled and unshelled nuts. The defendant is an Illinois corporation engaged in a similar business but it sells only unshelled nuts. Both of the corporations had been in the nut business for about 25 years, and each operated this business through brokers. The plaintiff had 66 brokers selling to its customers, and the defendant 64 brokers. Each sells unshelled Brazil nuts. The Brazil nuts imported by the plaintiff are of the type known as "natural" nuts. They are cured, dried, and processed after importation and before offered for resale by the plaintiff. The Brazil nuts sold by the defendant are dried, cured, and processed before being imported.

At the beginning of the 1961 season for the domestic sale of Brazil nuts the defendant sent a letter under date of September 25, 1961, to its 64 exclusive brokers. In this letter the "natural" Brazil nuts, such as those imported by the plaintiff, were referred to as "green" nuts. It was claimed that such nuts were "rarely, if ever, properly cured" and it was stated that 45% of all of the Brazils imported for the season were "green" but

1. The court also conditionally granted the defendant's motion for a new trial, pursuant to Rule 50(c) of the Federal Rules of Civil Procedure.

that defendant had imported only dried nuts. Moreover, the letter claimed that because of a moisture in the nuts, "[T]he people who buy Green Brazil Nuts (and most of them won't know they are getting green nuts) will have a shrinkage on their hands and the nuts will develop mould". The letter warned that "Food and Drug will be more active than ever" and that "somebody is going to be in trouble" if the Food and Drug inspectors find that the green Brazil nuts do not meet the proper standards. At the end of the letter the defendant listed plaintiff Continental Nut Company as one of the four importers bringing most of the green Brazil nuts into the country.

Circulation of this letter solely to defendant's brokers could not injure the plaintiff, since defendant and the plaintiff make their sales to customers through different brokers. However, there is testimony by four of the plaintiff's brokers that some seven or eight of their customers saw the letter and that three of these identified customers did not buy from plaintiff in 1961 or 1962. And, plaintiff's president testified that of the 384 customers, plaintiff had in 1960, 92 did not buy from it in 1961, and an additional 51 did not buy from it in 1962. None of these previous customers were called as witnesses nor was any evidence adduced as to the buying requirements of the three customers who saw the letter and placed no order with plaintiff in 1961 or 1962, nor with respect to the estimated profit plaintiff would have realized from purchases of these customers had their patronage remained with the plaintiff. Thus, the record is barren with respect to evidence of the sales and profit figures concerning the three customers shown to have seen the letter. Likewise, there is no evidence with respect to sales and profit figures relating to the other 140 previous customers, who did not reorder from the plaintiff in 1961 or 1962, although the evidence discloses that the plaintiff did maintain an account card for each of its customers, showing name and address and each purchase made by the customer. Moreover, plaintiff's president testified that of the previous customers who failed to buy from the plaintiff in 1961 and 1962 he did not know as a fact what customers the plaintiff lost as a result of the defendant's letter nor did he know whether the plaintiff lost any prospective customers.

The evidence as to monetary damages relied upon by the plaintiff to support and sustain the verdict consists of certified audit reports showing a decline in plaintiff's net sales, gross profits, net profits, earned surplus, and sales of Brazil nuts and of mixed nuts following the circulation of the letter to defendant's brokers as compared with increases in equivalent figures for the defendant (although only 40% of the defendant's business was in nuts—it also handled fruits and vegetables); and of testimony of a certified public accountant relative to a projected loss of profits by the plaintiff on sales of Brazil nuts and of mixed nuts during the two year period (the 1961 and 1962 seasons) following circulation of the letter.

Although the certified audit report figures might have been of some corroborative value in another context they are not meaningful here. They do not serve to establish loss of profit due to loss of sales of Brazil nuts, much less that any such loss was the result of patronage withheld because of the letter.

In making his projection of loss of profits the accountant witness assumed that plaintiff would have sold all of the Brazil nuts it purchased for the 1961 season during that season, subtracted the amount actually sold, and on the basis of "unrealized sales" applied an average sales price and profit margin which indicated a loss in net profits of $254,064 for the 1961 season, the year ended June 30, 1962. A figure of $179,261 loss of net profits for the succeeding year was similarly arrived at on the basis of averaging the actual sales for the years ended June 30, 1960, and June 30, 1961, and the sales attributed as above to the year ended June 30, 1962. A critical error involved in this computation is the un-

warranted assumption, unsupported by any evidence, that plaintiff would have sold during the 1961 season all of the Brazil nuts it had purchased for that season although its purchase for that year substantially exceeded its sales in the previous years. And, in terms of sales, the projected figure for plaintiff's sales of Brazil nuts for 1961 was placed at $780,000 as compared to actual sales of $530,000 in 1960. Plaintiff thus attempts to show a decline in 1961 from an assumed sales figure for that year which is almost 50% higher than the actual sales figure of the year before. By so doing, the plaintiff arrives at a profit figure on sales of Brazil nuts for 1961 which is more than twice that of the year before.

Apart from the inherent defects in the damages evidence here adduced, and its insufficiency to establish what actual monetary damage may have been sustained by the plaintiff, it is readily apparent that all of this evidence reflects a most general approach—a potpourri concept of dollar amounts of damages attributing all decline or loss in either the plaintiff's business generally, or in its sales of Brazil nuts, to the defendant's letter.

■ Our attention has been directed to no Illinois case involving appellate review of a fully tried attempt to prove special damages in a libel *per quod* action. Nor are we aware of any. The Illinois cases, and the decisions of this Court,[2] concerning libel *per quod* have turned on the question of the sufficiency of the allegations to state such a claim rather than on the sufficiency of the

proof to support a recovery. But none of these cases reflect any inclination to dispense with the requirement that "special damages" be proved with specificity. And, they do recognize that in a libel *per quod* action the special damage must be shown to be a necessary and proximate consequence of the publication involved. Davis v. Ferguson, 246 Ill.App. 318, 333.

■ We agree with the District Court that on the evidence here adduced the jury "was left to speculate as to the dollar amount of these accounts and whether the libel caused the losses". And we are convinced that under the theory of the Illinois *per quod* decisions that in a libel *per quod* action based on loss of customers, where, such as in the case here, the plaintiff knows the identity of the customers it claims to have lost and has a record of the previous purchases of each, special damages in the form of profits lost because of the withdrawal of patronage by such customers, to be recoverable, must be proved with that specificity which shows the loss of profit attributable to patronage withheld by the particular customer and that such withholding was the result of the publication. This the plaintiff failed to do. And, such is the nature of "special damages". They are such as really took place. They are not to be implied but are to be specifically proved.

As the trial judge so aptly pointed out, the striking fact about the record in this case is that plaintiff has not produced the testimony of a single customer or former customer on these questions. Nor has it shown the dollar value of lost sales to specific customers. And there is no

2. Among the many cases referred to in this connection are: Campbell v. Morris, 224 Ill.App. 569; Davis v. Ferguson, 246 Ill. App. 318; Life Printing and Publishing Co. v. Field, 324 Ill.App. 254, 58 N.E. 2d 307; Cook v. East Shore Newspapers, Inc., 327 Ill.App. 559, 64 N.E.2d 751; Dilling v. Illinois Publishing & Printing Co., 340 Ill.App. 303, 91 N.E.2d 635; Parmelee v. Hearst Publishing Co., 341 Ill.App. 339, 93 N.E.2d 512; Eick v. Perk Dog Food Co., 347 Ill.App. 293, 106 N.E 2d 742; Tiernan v. East Shore Newspa-

pers, Inc., 1 Ill.App.2d 150, 116 N.E.2d 896; Gogerty v. Covins, 5 Ill.App.2d 74, 124 N.E.2d 602; Hambric v. Field Enterprises, 46 Ill.App.2d 355, 196 N.E.2d 489; Lundstrom v. Winnebago Newspapers, 58 Ill.App.2d 33, 206 N.E.2d 525; Whitby v. Associates Discount Corp., 59 Ill.App.2d 337, 207 N.E.2d 482; Segall v. Lindsay-Schaub Newspapers, Inc., 68 Ill. App.2d 209, 215 N.E.2d 295; Brewer v. Hearst Publishing Co., 185 F.2d 846; and Schy v. Hearst Publishing Co., 205 F. 2d 750.

evidence that more than seven or eight of these customers even knew of the publication referring to plaintiff as an importer of "green" Brazil nuts. No customer, although all were known to plaintiff, was asked the questions; the jury was left to speculate.

Plaintiff argues that for it to have interrogated its previous customers on the subject would have resulted only in aggravating the damage by alienating such customers. We do not find such argument to be persuasive. Electric Furnace Corp. v. Deering Milliken Research Corp., 6 Cir., 383 F.2d 352, 354–355.

Plaintiff's reliance upon Pendleton v. Time, Inc., 339 Ill.App. 188, 89 N.E.2d 435, is misplaced. There the court pointed out (339 Ill.App. 188, 196, 89 N.E.2d 435) that the action involved was not to be confounded with a libel action where unless the words are actionable *per se*, special damages must be alleged. The court found an allegation of special damage unnecessary. The case is no authority concerning what constitutes proper proof of special damage. Likewise, Erick Bowman Remedy Co., Inc. v. Jensen Salsbery Laboratories, Inc., 17 F.2d 255, is of no aid to plaintiff. There the court merely recognized (17 F.2d 255, 261) that there can be circumstances, where, in a libel *per quod* action, an allegation of the names of customers who withdrew or withheld their custom is unnecessary—such as a case where the customers are a floating or transitory class, and their individual identity unknown. But that is not the situation here.

■ We are of the opinion that the rationale of Electric Furnace Corp. v. Deering Milliken Research Corp., 6 Cir., 383 F.2d 352 is controlling here. That decision strongly reaffirms the principle that evidence of a decline in sales and profits after the publication is not enough to support a verdict because it fails to show causal connection between the publication and the loss. The court observed that plaintiff's reliance on a general decline in its business meant that "the *sine qua non* of a libel per quod ac-

tion—proof of actual and special damages as a result of an alleged libel—is missing. There is, in effect, no tort demonstrated". (383 F.2d 352, 356).

■ And, absent proof of actual damages, an award of punitive damages in an action for libel *per quod* is without support. Electric Furnace Corp. v. Deering Milliken Research Corp., 6 Cir., 325 F.2d 761, 766.

We conclude that the District Court did not err in granting the defendant's motion for judgment n. o. v., and entering judgment for the defendant.

The judgment order of the District Court is affirmed.

Affirmed.